### No. 12,883.

51 989
θ110 273
110 277
θ110 278

### ERNEST E. WOODCOCK vs. DAVID G. BALDWIN.

### Syllabus.

The *destination du pere de famille* is the use which the owner has intentionally established on a particular part of his property in favor of another part, and which is equal to a title with respect to perpetual and apparent servitudes thereon; and by this *destination du pere de famille* is meant the disposition which the owner of two or more estates has made for their respective use.

in relation to such a servitude, permanence of destination, and the *caractere de perpetuite* are the essential prerequisites of their estab `thment.

If the owner of two estates, between which there exists a: `pparent and continuous servitude, sell one of those estates without any n `tion being made of same in the title, it shall continue to exist in favor of, or upon the estate which has been sold.

The destination made by the owner is equivalent to title with regard to apparent and continuous servitudes.

O N APPEAL from the Civil District Court for the Parish of Orleans. *Ellis, J.*

*Clegg & Quintero* and *Chaffe & Bowers* for Plaintiff, Appellee.

*E. Howard McCaleb* for Defendant, Appellant.

Argued and submitted March 7, 1899.

Opinion handed down April 17, 1899.

Judgment amended and rehearing refused May 15, 1899.

Opinion on application for rehearing by BREAUX, J.

The opinion of the court was delivered by

WATKINS, J. Alleging himself to be the owner of certain described pieces, or parcels of improved real estate in the city of New Orleans, the plaintiff avers that the defendant, claiming to be owner thereof, or some portion thereof, has taken possession of same, either through himself, or his tenants, and refuses to surrender same, although amicable demand has been made of him therefor.

The lots of ground in contest are situated in the Sixth District of the city, in square No. 455, bounded by Napoleon avenue, Baronne, Berlin and Dryades streets; one of the said lots is designated as *No. 4,* commencing at a distance of ninety (90) feet from the corner of Napoleon avenue and Baronne street, and measuring thirty (30) feet front on Napoleon avenue, by one hundred and twenty (120) feet in depth, between parallel lines; another of said lots is No. 15, commencing at a distance of sixty (60) feet from the corner of Berlin and Dryades, by one hundred and twenty (120) feet in depth, between parallel lines; and the third is an irregular piece of ground in the same square, composed of lots 9, 11, 12, 23 and 24, commencing on Napoleon avenue at a distance of fifty-four (54) feet from the corner

of Dryades street, measuring six feet front on Napoleon avenue, and extending towards Berlin street, one hundred and thirty (130) feet, and thence at right angles with Baronne street, a distance of sixty-six (66) feet, and thence on a line at right angles with Berlin street, etc.

Petitioner alleges that there is situated on the aforesaid lot No. 4, a dwelling which extends over a lot of which the defendant claims to be owner, but which said property in fact belongs to him; that he has the right to occupy and enjoy the use of and the revenue to be derived from same, but that the defendant having assumed possession thereof has deprived him thereof, though his said possession is in bad faith, he well knowing that he is not the owner of said house.

That the defendant has received the rents and revenues of said house for the five months preceding this suit, and for which he owes him the sum of $400, the rental value thereof being eighty ($80) dollars per month.

The petition then, somewhat, qualifies the foregoing statement thus, viz.:

"He further shows that the house, situated as hereinbefore " described, partly on the lot belonging to your petitioner and partly " on the lot claimed by Baldwin, is, in so far as it rests on the lot " owned by your petitioner, the property of your petitioner; and in so " far as it rests upon the lot owned by the defendant, your petitioner " believes it to be the property of the defendant."

Alleging the impracticability of a division of said house in kind, and that an attempt to so make it would result in its total demolition and destruction, the plaintiff avers his unwillingness longer to hold said house in common, and demands a sale thereof in order to effect a partition.

His prayer is that he be recognized as the owner of said properties, and that defendant be decreed to remove from said premises, and to discontinue the use of same; and that there be rendered a decree ordering the sale of said house as an entirety, in order to effect a partition thereof.

The answer of the defendant substantially avers that he is the owner of two lots of ground in the aforesaid square, designated by the numbers *five* (5) *and six* (6), adjoining each other, and each one measuring thirty (30) feet front on Napoleon avenue, by one hundred and twenty (120) feet in depth, between parallel lines, "together with

Woodcock vs. Baldwin.

the improvements thereon, and the rights, ways, privileges, and advantages thereunto belonging, or in any wise appertaining, etc."

That he is, also, the owner of the two lots in the same square designated by the numbers *seven* (7) *and eight* (8), which adjoin each other, and front on Napoleon avenue, and have exactly similar boundaries as the two first described.

That he acquired said properties at a sheriff's sale made on *the 24th September, 1896*, in executory proceedings entitled, Mrs. Mary G. T. Stempel, Guardian, vs. William F. Fullham, in the Civil District Court, parish of Orleans, in the foreclosure of an act of special mortgage which had been executed by said Fullham in favor of the executor of the estate of D. C. McCan, bearing date June 5th, 1895.

That he is informed, and believes, that the plaintiff in this suit purchased from the aforesaid Fullham, certain lots adjoining his property aforesaid, by a notarial act which bears date *October 10th, 1896,* about fifteen (15) days subsequent to his acquisition aforesaid.

That, before mortgaging said properties to the estate of McCan, said mortgagor, Fullham, "had constructed on said *lots five* (5) *and six* " (6) * * * a residence on Napoleon avenue * * * and so " represented to the mortgagee, and had established the division fence " and buildings thereof, representing said improvements thereon to " be situated upon said lots *five* (5) *and six* (6) so mortgaged as here- " inabove recited."

That said Fullham had, also, constructed a residence on lots *seven* (7) *and eight* (8) in the same square, prior to the mortgaging thereof, and had, likewise, established boundaries, fences, etc., prior to the execution of said mortgage, "representing that the said residence, " buildings and improvements, were situated and located upon said " lots so mortgaged as aforesaid."

The answer further avers that the destination made by Fullham, who was, at the time, the owner of the property mortgaged and subsequently sold to defendant, and, also, of the adjoining property which was subsequently acquired by the plaintiff, "is equivalent to " title with respect to the continuous and apparent servitudes which " he had established in favor of the estate acquired by the defendant " as aforesaid upon the adjacent property subsequently acquired by " the plaintiff herein."

That the limits assigned to said property by said Fullham, at and

prior to said sale, "can not be disturbed, or in any way encroached "upon by the plaintiff herein."

That Fullham is, and was, estopped from claiming any part or portion of the building and improvements situated within the limits so assigned by him as aforesaid; and that he could not transfer to the plaintiff herein any greater rights or titles than he himself possessed.

That the plaintiff is, likewise, estopped from asserting any right, title or interest, in or to the buildings, improvements and fences which were so erected by his vendor, Fullham, upon the lots so acquired by the defendant; and from questioning or disturbing the bounds and limits so fixed and established by his vendor, who had previously mortgaged same to the estate of McCan, and which defendant subsequently acquired at foreclosure sale.

The answer further avers that the plaintiff never acquired by conveyance from Fullham any right, title or interest whatever in the dwellings, buildings or improvements, which were acquired by defendant as aforesaid; but, that same are "illegally, wrongfully and fraudu-"lently claimed by said plaintiff."

It further avers that the buildings and improvements on lots five (5) and six (6) are worth more than $4,000; and those on lots seven (7) and eight (8) are worth more than $5,000.

It concludes with a prayer that the plaintiff's demand be rejected.

On the trial, the following judgment was rendered, viz.:

That the plaintiff is recognized as the owner of the properties, described in his petition, "together with all the buildings and im-"provements thereon, except the portion of the house located mainly "upon lot No. 5, as far as it extends upon lot No. 4; and except the "portion of the house located mainly upon lot No. 8, so far as it "extends upon the strip of ground lying between lot 8 and fractional "lot 9.

"The ownership of lot No. 4, and of said strip between lot 8 and fractional section 9, is decreed subject in defendant's in favor to the personal servitude of use and habitation to the distance that said two houses rest, respectively, thereon; this servitude to last, respectively, so long as said houses, respectively, shall remain, and no longer; and when said houses, or either one of them, shall no longer remain, plaintiff's ownership, in all respects thereafter, shall be absolute and complete, as though said servitude had never existed.

"Plaintiff's demand for rents as to all properties, except the parts

thereof decreed subject to servitude, is dismissed as in case of non-suit; and the right is reserved to both parties to have permanently marked the limits recognized by this decree also reserved."

A rule was taken on the part of defendant for a new trial, but it was discharged, and, thereupon, the defendant obtained a suspensive appeal from the aforesaid judgment.

In this court the plaintiff has filed no answer to the appeal, and requested no amendment of the judgment; but, in the brief of his counsel, we find this statement:

"The judgment appealed from dismisses plaintiff's demand for rents, as in the case of non-suit.  *  *  *  Therefore the plaintiff is here content with the non-suit of his demand for rent, and will adjust that in another proceeding hereafter."

The statement made of the plaintiff's case in the brief of counsel, is as follows:

In 1892, William F. Fullham owned all the property, with the exception of two or three lots, located in the square bounded by Napoleon avenue, Dryades, Baronne and Berlin streets; and being desirous of improving the same, he executed mortgages on various lots, to various money lenders. He obtained a loan on lots 5 and 6 from D. C. McCan, then living, and on lot 4, from Mike McQuade, then living. At the time the loans were first obtained, the house, No. 1817 Napoleon avenue, was being built; one-half of this house rested on lot 4, and one-half thereof rested on lot No. 5.

That Fullham executed a mortgage in favor of the estate of McCan on June 11, 1895, for $53,000, hypothecating as security therefor five pieces of property, among which were lots 5 and 6, on Napoleon avenue, above described; and, also, lots Nos. 7 and 8—reference being made to a private sketch, as annexed to the act of mortgage, which is in the record.

That Fullham having made default in the payment of the sum of money loaned, foreclosure proceedings were instituted by Mistress Stemple, guardian, on June 11, 1896, and they resulted in a sale to the defendant on September 24, 1896, he being the last and highest bidder for all of said lots, 5, 6, 7 and 8.

Then occurs this statement, to-wit:

"That plaintiff in this suit, a resident of the State of Arkansas, purchased, on October 10, 1896, lot No. 4, and fractional parts of lots 9, 11, 12, 14, 15, 23 and 24, together with all the improvements on said

lots and portions of ground, and all rights, ways, privileges and advantages, thereto belonging, or in any wise appertaining.

"The mortgage, executed in 1893 (that in favor of McQuade), on lot 4 was specially assumed as part of the purchase price by the plaintiff."

"Ernest Woodcock having bought lot 4, together with the improvements thereon, is, in our opinion, entitled to be recognized as owner thereof, and, also, as owner of that part of the house which rests on his property."

From the foregoing statement it appears that this proceeding is somewhat *sui generis,* its object being chiefly to have the plaintiff recognized as the owner of a building to the extent that it extends over and rests upon his lot, and to obtain a decree of partition by licitation.

This claim is denied and resisted by defendant on the ground that the mortgagor, who, at the time owned the whole property, divided same into lots, and erected buildings upon them, and thereafter borrowed money thereon, and mortgaged same with the improvements, and, in the foreclosure of same, he purchased at judicial sale, and thereby acquired the mortgagee's rights; and that, hence, the apparent servitude which had been thus imposed upon the property mortgaged passed to him by said sale, and as a part of the adjudication.

*Per contra,* the contention of the plaintiff's counsel is that a judicial sale under execution, transfers only the rights of the debtor, such as they are; and that a purchaser thereat gets no better title to the property than was held by the defendant in execution, and acquires no right on the property which did not belong to him; and to this purport a number of authorities are cited.

Accepting this proposition as undoubtedly true of an ordinary execution sale, under a money judgment, yet it may be somewhat inaccurate with regard to a sale made pursuant to an order of seizure and sale in the foreclosure of a conventional mortgage; as in such case the source and extent of the purchaser's rights is the act of mortgage, and not the adjudication under it.

In the former case, the purchaser only acquires what the execution debtor actually owned; whilst, in the latter case he acquires all the rights which the debtor represented to his creditor in the act of mortgage that he owned and hypothecated to him, for the reason that a mortgage is a *quasi* alienation.

The following is a sketch of square No. 455, and upon which are indicated all the lots in question, viz.:

This sketch shows that lot four, property of plaintiff, adjoins, on the east, lot five, property of the defendant; and it is upon those two lots that the houses and other improvements which are in contest are situated—the line of division between them bisecting the house into two nearly equal parts.

It further shows that lot eight, property of the defendant, adjoins, on the east, the fractional portion of lot nine, and on the north the fractional portion of lot eleven, property of the plaintiff; and it is upon these three lots that some of the improvements which are in contest are situated—the aforesaid improvements on lot eight extending over on lots nine and eleven only a little way.

The following is the description of the property as it is given in the authentic act of mortgage from William F. Fullham to Harry H. Hall, executor of the estate of McCan, bearing date June 5th, 1895, viz.:

"3d.—'Two certain lots of ground, together with the improvements " thereon, and the rights, ways, privileges and advantages, thereunto " belonging, or in anywise appertaining, situated in the Sixth District " of this city, in square 455, bounded by Baronne, Dryades, Berlin " and Napoleon avenue, said lots being designated by the Nos. 5 and " 6, and adjoin each other, measuring, each, 30 feet front on Napo- " leon avenue, by 120 feet in depth. Being the same property acquired " by the mortgagor herein on the 19th of February, 1891.' "

*          *          *          *          *          *          *

"4th.—'Two certain lots of ground, together with the buildings and " improvements thereon, and the rights, ways, privileges and advan- " tages thereto belonging, or in anywise appertaining, situated in the " Sixth District of this city, in square No. 455, formerly No. 75, " bounded by Napoleon avenue, Berlin, Dryades and Baronne streets, " designated by the Nos. 7 and 8, which said lots adjoin each other, " and measure, each, thirty feet front, on Napoleon avenue, by a " depth of 120 feet between parallel lines. All *as per private sketch* " *attached to an act of mortgage* granted by the said W. F. Fullham, " executor of the estate of D. C. and H. C. McCan, as per act passed " before me, notary. Being the same property acquired by the mort- " gagor herein on April 29th, 1892.' "

The act of mortgage contains the following additional stipulation upon which counsel for the defendant places strong reliance, viz.:

"The said mortgagor further binds himself to keep the buildings " on the above described property constantly insured against loss by " by fire, and to transfer such insurance to the mortgagee, or to any " other holder or holders of above described note up to the full amount " of such note. Said mortgagor hereby authorizing said mortgagee, " or any holder or holders of above described note, to cause said

" insurance to be effected on his default, at a premium not exceeding.. " two per cent."

The certificate of mortgages shows that the mortgage which Full-ham granted on lot four, in favor of McQuade, was for the sum of $900, bears date April 16th, 1893, and was recorded on the same date in the book of mortgages—the act itself not having been offered in evidence.

In the act of sale from Fullham to the plaintiff, of date October 10th, 1896, there is a clause to the effect that "said purchaser assumes " the mortgage for $900, * * * granted by said vendor in favor " of M. McQuade, * * * as per act passed before W. H. Gurley, " notary public, on April 6th, 1894, bearing on said lot No. 4; and the " said purchaser hereby assumes the said act of mortgage, and binds. " himself to pay the note secured by said mortgage in the place and. " stead, and to the acquittance of said vendor, as a part of said pur- " chase price as aforesaid, etc."

But the said mortgagee, McQuade, did not make himself a party to that act of mortgage, or in any manner assent to said assumption, or release Fullham from the payment to him of the debt, which is thereby secured; and he is neither a party nor a privy to this suit.

The plaintiff having purchased the aforesaid property from the. mortgagor, Fullham, and assumed to pay off his mortgage indebted-ness as part of the purchase price, is not entitled to assert or claim the benefit, or champion the right of his creditor, McQuade; and particu-larly as against another mortgage creditor of his vendor, or as. assignee of the rights of such creditor—that is to say, of the estate of McCan, or the defendant.

When the plaintiff purchased the aforesaid property he acquired the right and title of Fullham, his vendor, just as it was, and nothing more; and the rights of the defendant had been fixed and established by the sheriff's adjudication fifteen days previous thereto.

The principal question is, therefore, what did the defendant acquire by such adjudication, and not what the common debtor, Fullham, thereafter sought to convey to the plaintiff; for it is quite evident that. the plaintiff has no better right to contest the defendant's title, than Fullham, the common author and mortgagor, woud have, were he the plaintiff in his stead.

The following is a summary of the reasons for judgment which were. assigned by our learned brother of the District Court, viz.:

Woodcock vs. Baldwin.

That when plaintiff was owner of all of the aforesaid lots, he erected two large residences, or mansion houses thereon; one of them was built upon lot five, but extended over lot four to the extent of twelve or fifteen feet; and another was built upon lot eight, but extended over the narrow strip of ground lying between it and fractional lot nine, to the extent of six or eight feet.

That it is evident that said buildings were intended to be permanent; and that same can not be divided or removed, without serious loss.

"That the legal deduction is, that, to the extent by which said " houses extend over, on to lot four (the one), and over and upon the " fractional strip between lot eight and fractional lot nine (the other) " the owner of all these lots of ground established a servitude; upon " said lot four, and upon said narrow strip or fractional lot nine, in- " tended to exist as long as said two houses remain, but without the " intention to alienate permanently the title to any part of the ground " itself."

He was satisfied that it was not Fulham's intention to, in any way, alienate lot four, but that he subjected same to a servitude in favor of the adjoining lot five by erecting expensive and elaborate buildings on the latter which extended over and upon the former; and that, equally so, did he create and establish a like servitude on fractional lots nine and eleven.

He further expressed himself satisfied that Fulham did, "by the " destinations made by him, when owner of the whole, establish the " servitude of use and habitation upon the lot four (4) and upon the " narrow strip between lot eight (8) and fractional lot nine (9) to the " extent that the house erected on lot five (5) encroaches and stands " upon lot four (4); and, to a like extent, that the house on lot eight " (8) encroaches and stands over upon said narrow strip between lots " eight (8) and fractional lot nine (9) which must be respected and " recognized, so long as said parts of said respective houses remain, or ",stand thereon, but no longer; so, that, if at any time, said houses " should be removed, or cease to stand, or be destroyed, the servitude " of use and habitation would end, and plaintiff's title would be abso- " lute, i. e., embrace not only the fee, but the use, usufruct and absolute " enjoyment, as well, in all respects, as if said servitude of use and " habitation had never been established.

"This servitude it seems to me, is commensurate only with the

" limits of said two dwelling-houses.  It goes not one single inch be-
" yond.   It follows the exact outer lines of the said encroachments, be-
" yond the limits of lots five (5) and eight (8) respectively, over on to
" lot four (4) and on to said narrow strip between lot eight (8) and
" fractional lot nine (9).

"It does not take away any of the soil of lot four (4), or of said
" strip between lot eight (8) and fractional lot nine (9), except that
" directly under said two houses; or, in other words, the ground upon
" which they stand, and this servitude is limited in its duration to
" the time during which said encroaching parts of said two houses
" shall stand or remain, and no longer.

"Subject to this limited servitude of use and habitation, the plaintiff
" is the owner of all the properties described in his petition, and the
" act of sale annexed thereto, of date October 10th, 1896."

With regard to the defendant's claim of a continuous and apparent
servitude, that is to say, a *destination du pere de famille,* the judge
said:

"The *destination du pere de famille,* is equivalent to title, but  only
" to the extent which it fixes, with the intention of permanency.   In
" this case, under all the proof, oral and documentary, the title which
" I find by the destination of Mr. Fulham when the owner of all the
" lots, is the title to the servitude of habitation and use within the
" limits I have stated; a title equal to  the partial and  temporary
" alienation; but not to a permanent transfer, or alienation of the
" ground or soil itself, the fee to the part of the ground thus subjected
" to the said servitude, remaining still in Fulham until he transferred
" it to the plaintiff."

Considering all the foregoing contentions, and the evidence ap-
plicable thereto, it seems clear that the defendant acquired by the
sheriff's sale made under a writ of seizure and sale in the foreclosure
of special mortgage, lots five, six, seven and eight, "together with the
" improvements thereon, and the rights, ways, privileges and advan-
" tages thereunto belonging, or in any manner appertaining, etc." .

That at the time the mortgage was consented by Fulham, the build-
ings and improvements had been only partially completed, and the
money loaned him by the mortagee was employed in the completion
and equipment thereof.

The mortgagor being at the time owner and proprietor of not only
the aforesaid lots which were adjudicated to the defendant, but of

those claimed by the plaintiff, as well, had, theretofore, designated them by numbers upon a map, plan or sketch he had caused to be made for his own use and convenience, and had built fences and other enclosures around them; but the fact appears to be, that when the buildings and edifices had been completely constructed, they actually extended over and beyond the line of division between lots five and four upon the one side, and over and beyond the line of division between lots eight and nine, upon the other side, as said two division lines are designated upon the aforesaid sketch.

That with the apparent assent of both mortgagor and mortgagee, the buildings were leased, occupied, mortgaged and sold as parts of said lots five, six, seven and eight, and without any reference to their encroachment upon the aforesaid lots four, on the one side, and nine on the other; and without objection or protest of the mortgagor, the defendant, as adjudicatee, entered into possession, and has continued to remain in possession thereof as owner. That the record discloses that the only protest against sale being made of improvements, came from McQuade, as a first mortgage creditor, for $900.00; but it, also appears, that he is neither a party nor privy to this suit, and that his protest cannot, be in any way considered or passed upon—but his rights, whatever they may be, must be fully reserved.

That some fifteen days subsequent to the aforesaid adjudication to the defendant—at a time so recent, that all of the foregoing facts must have been fresh in the minds of all the participants—the mortgagor and seized debtor, Fulham, made a voluntary sale to the plaintiff, a citizen of Arkansas, of lot four, and a small fraction of lot nine adjacent to lot eight; and in the deed of sale, he purported to convey all the buildings and improvements thereon situated, and he, soon afterwards, brought this suit.

In our opinion, the plaintiff's demand is not well founded in either law or equity; and has no better right or stronger claim that Fulham, his vendor, would have—he being the common author of both titles.

The plaintiff and appellee, having failed to make answer to the appeal, and not having, by formal plea in this court, requested any amendment to the judgment appealed from, the only question left for our consideration is, whether we shall favorably entertain the amendment requested by defendant's and appellant's counsel, or affirm the judgment as it was pronounced.

His contention is that Fulham, when he was owner of all the lots in

controversy, gave to them a destination by the buildings and edifices · he constructed thereon, which was equivalent to a title, with respect to such apparent and continuous servitudes; and which continued to · exist thereon after the sheriff's sale to the defendant, in his favor.

And, that, on account of Fulham having created and maintained. upon said lot four on the one side, and lot nine on the other, the aforesaid continuous and apparent servitudes, which is a destination equivalent to title, he was equally without right, as without power, to make to the plaintiff a title thereto under which he could evict and dispossess the defendant, as the purchaser thereof.

A collation and analysis of the articles of the code on this subject will prove advantageous and instructive, and the following articles thereof are pertinent and controlling:

"Continuous servitudes are those whose use is or may be continual " without the act of man.

"Such are acqueducts, drain, view and the like." Rev. Civil Code, 727.

"Again, servitudes are either visible and apparent, or non-ap-" parent.

"Apparent servitudes are such as are to be perceivable by exterior " works; such as a door, a window, an acqueduct." Rev. Civil Code 728.

"Continuous and apparent servitudes may be acquired by title, or " by a possession of ten years." Rev. Civil Code 765.

"The destination made by the owner is equivalent to title with: " respect to continuous servitudes.

"By destination is meant, the relation established between two im-" movables by the owner of both, which would constitute a servitude, " if the two immovables belonged to two different owners." Rev. Civil Code, 767.

"Such intention is never presumed, till it has been proven, that both " estates, now divided, have belonged to the same owner, and that it " was by him that the things have been placed in the situation from " which the servitudes result." Rev. Civil Code, 768.

"If the owner of two estates, between which there exists an apparent " sign of servitude, sell one of those estates, and if the deed of sale " be silent respecting the servitude, the same shall continue to exist " actively or passively in favor of, or upon the estate which has been " sold." Rev. Civil Code, 769.

These articles seem to have exact application to the question under consideration in the following particulars: (1) that the buildings and edifices constitute a continuous and apparent servitude upon the lots of land; (2) that they were established thereon by Fulham when he was the owner of all of them; (3) that the buildings and edifices were partially constructed when he executed a mortgage thereon for a loan of money to be used in the completion of same; (4) that they were completed and occupied at the time the property was adjudicated to the defendant; (5) and their situation and condition were exactly the same when the plaintiff bought from a common author.

Unfortunately, the adjudications upon this subject are not very numerous, but this may possibly be referable to the fact, that the precepts of the code are so ample.

Our attention has been particularly invited by plaintiff's counsel to the opinion of our predecessors in Murrell vs. Fowler, 3rd Ann., 165, and to which they refer as "the only case, at all similar to this that " they have been able to find."

The facts of that case are as follows, viz:

The plaintiff and defendant were the owners of two adjoining city lots, which they had purchased at the same public sale.

On the plaintiff's lot there was a three-story brick building, but on that of the defendant, there was only a temporary structure. Subsequently to the sale, the defendant erected a brick building on his lot, and made use of the contiguous wall of the plaintiff to rest it against, assuming same to have been a party wall, *i. e.*, one in common.

Denying this theory, plaintiff brought suit against the defendant for re-imbursement to the amount of one-half of the value of the wall, and of the ground upon which same was built. C. C. 684.

The opinion says:

"The defence is that, by the destination of the original proprietor, " as well as by presumption of law, the wall is what is called a common " wall between the proprietors of the adjacent lots."

But the court observed, that "we think any such presumption is re- " pelled by the situation and condition of the property at the time it " was occupied by the original owner.

"The wall is *entirely on the land of the plaintiff*. It is two bricks " thick in the first story, and one and a-half in the second and third; " the foundation, however, projecting seventeen inches at *its base* " *under the surface of the defendants' lot.*"

Hence it was, that the court rejected the defendants' claim that plaintiff's adjacent wall, was a wall in common, by reason of an alleged servitude which the common author of both the plaintiff and defendant had imposed upon the part defendant bought.

The reason for the court so holding is clear, and it is that no part of the building was on defendants' lot, and the seventeen inch base of the wall was *under the surface* of the defendants' lot.

Thereupon, the court very justly observed, viz:

"The use which the owner has established on one part of his " property in favor of another part, is equivalent to a title with respect " to *perpetual* and *apparent* servitudes which may be acquired by " title; and in relation to those servitudes, permanence of destination, " and the *caractere de perpetuite* are essential requisites of their estab- " lishment. Durel vs. Boisblanc, 1 An. Rep., 408.

"The building which was upon the defendants' lot at the time of " the purchase, we think, under the evidence, did not possess these " requisites, and had not the effect of creating the *destination du pere* " *de famille,* even supposing such an effect were possible under the " law."

In Durel vs. Boisblanc, cited *supra,* two adjoining city lots, with buildings on each, were sold at succession sale, described as having thirty feet front each. One of the buildings covered the greater part of the front, and the other covered the residence only; and the lots were adjudicated to two different purchasers. No mention was made of any servitude, either in the advertisement, or in the act of sale.

On that state of facts, it was held that the servitude of light and way being apparent, and necessary for the occupation and use of one of the dwellings, the purchaser of the lot on which they are established must have known of their existence and is bound to take the lot subject thereto. *Aliter,* were the purchaser ignorant of the servitudes, and they such as to render it probable that the purchaser would not have bought the property had he known of their existence.

And, thereupon, the court said:

"The servitudes of way and of light are apparent, and necessary " for the occupation and use as a dwelling-house, of the property pur- " chased by Boisblanc, and as such, are of a permanent character, and " can, in no sense, be said to have been concealed from Rivereau, the " purchaser of the contiguous estate."

Applying the principles announced in those cases to the facts of

this case, it is manifest that they are applicable to the latter with far greater force. In this case the house itself was built upon both lots. four and five in one instance, and on lots eight and nine in the other. They were built by the common author of both plaintiff and defendant when he owned all of the lots.

Lots five and eight were mortgaged with all of the buildings and improvements, and subsequently sold to the defendant.

Fractional lots nine and eleven were sold to the plaintiff, fifteen days subsequently, by the common author and mortgagor, both of whom had full knowledge of defendant's previous purchase and possession of all of said buildings and improvements, and the rents and revenues of which he demands in this suit.

The buildings are shown by the evidence to be large, commodious and expensive, and hence, they are, in the very nature of things, permanent and apparent.

It is clear that the plaintiff willingly and voluntarily bought the property, well knowing its extent and situation.

In Gottschalk vs. DeSantos, 12th Ann., 473, the court employs this very clear statement, relative to this class of servitudes, viz:

"What other use could he have had for it then, except for the use " and convenience of the whole or a part of his other three lots?

"This is not called a servitude, but a 'destination du pere de fam-" ille,' or the use which the owner has intentionally established on a " particular part of his property in favor of another part, and which " is equal to a title with respect to perpetual and apparent servitudes " thereon; and by this destination du pere de famille is meant the dis-" position which the owner of two or more estates has made for their " respective use. C. C. 645, 763."

The code, in terms, declares that by the destination which is equivalent to title, is "meant the relation established between two immov-" ables by the owner of both, which would constitute a servitude if the " two immovables belonged to two different owners. R. C., 767."

In the previous case, the court very appropriately remarked, viz:

"As this servitude is an abandonment of property, an alienation " equal to title, it must not then be intended only, or partially estab-" lished, but must be perfected in such manner that it can be useful to " the adjacent lots."

In Lavillebeuvre vs. Cosgrove, 13 Ann., 323, this question was treated and decided by our predecessors, and we regard their opinion

as quite appropriate to the instant case—it having reference to an opening in a party wall.

The court say: "But the defendant urges his right to the opening "in question, upon the ground that the wall now held in common be- "tween himself and the plaintiff, was *built by a person who was at the* "*time, the owner of lots on both sides of the wall;* that the opening "or window was made in the wall by the said *owner at the time of* "*building;* and that this *act of original proprietor of both properties,* "*is equivalent to title* creating a servitude upon the property now "belonging to plaintiff, for the benefit of that belonging to defend- "ant." (Our italics.)

The facts stated by the court which are pertinent to this case are as follows, viz:

That the two lots, with their improvements, were sold under execution, with the aforesaid party-wall existing between the buildings. That the adjudicatee subsequently sold the two lots and their respective improvements to two different vendees.

The court then say: "While the property now held by defendant "belonged to his vendor, Parish, and about six months before the sale "from Parish to defendant, of his own authority, closed the window "which had thus existed in the partition wall between himself and "*Parish,* from the time of its first erection, by nailing heavy planks "across the Venetian blinds of the window on the outside. *Things* "*were in this state when defendant purchased* the property from Par- "ish; and defendant having re-opened the window, plaintiff brings "this action to have the same closed, etc."

On this state of facts, the court said:

"There is no doubt that the building of this division wall with the "window, by Waldon, who was the owner of the land on both sides of "the wall, constituted, what is called in the French text of Articles "645 and 768 of the Code, (the latter article copied from Article 692 "of the Code Napoleon), a *'desination du pere de famille,* which by "Articles 763, 764 and 765, was *equivalent to a title creating a servi-* "*tude, as soon as a division of ownership of the properties took place* "*by the sale from the City Bank to Parish."*

This claim was resisted by the adjoining proprietor on the ground that the window had been closed before the sale to the defendant, and, thereby, the servitude of light had been extinguished before he bought, but this was denied by the court.

"This argument," they say, "cannot meet with our sanction; Cos-"grove acquired from Parish by his title, a lot of ground, 'together "with all the buildings and improvements thereon, *rights, privileges* "and appurtenances thereunto belonging  *or in any wise appertain-* "*ing.'* . Parish had acquired from the City Bank, by identically the "same description. The servitude of light existed, as we have said, "in favor of Parish. It was transmitted to Cosgrove, unless it had "been lost in Parish's hands. It is pretended that it was so lost by the "act of plaintiff, barring up the window."

This proposition is denied by the court, saying:

"The erection of works, contrary to the servitude, it is true, has "the effect of extinguishing the servitude. But this effect follows, "according to Article 816, only when the *owner of the estate to which* "*the servitude is due, has given an express permission or consent to* "*the erection of such works* either verbally or in writing, which is not "pretended in the present case."

That decision seems particularly pertinent to this case, because it dealt with an exactly similar question, and interpreted the same articles of the code which we have quoted and analyzed.

The foregoing decisions are in exact keeping with those of an early period in our jurisprudence.

For instance, it was said in Barton vs. Kirkman, 5 R., 16.

"The plaintiff has shown that the whole lot belonged to the same "proprietor, and that the things have been placed by her in the situa-"tion from which the servitude by him claimed results. It is clear "that the servitude is within the provisions of Articles 763 and 764 of "the Civil Code, *and that the defendant by whom it was established,* "*has now no power to destroy it. The use, says the law, which the* "*owner has intentionally established on a particular part of his* "*property in favor of another part, is equal to a title, with respect to* "*perpetual* and apparent servitudes thereon." (Our italics).

In Alexander vs. Boghel, 4 La., 312, the court stated the proposition of the defendant in the instant case very tersely, and in a few well chosen words, as follows, viz:

"When the proprietor of the two lots sold (one) to the defendant, "and remained silent, *that which he retained was burthened with the* "*service. He could not have resisted the exercise of the right; and* "*it is almost unnecessary to say, that he could not transfer to another* "*that which he had not himself.*"

All of the foregoing authorities are perfectly uniform and consistent, and support the proposition for which defendant contends.

The case of Ker vs. Evershed, 41st Ann., 15, to which we have been referred, possesses some of the features of the instant case, yet, in other respects it was dissimilar.

That suit was brought by the administrator and certain creditors of the deceased mortgagor, Ker, holding mortgages on lots adjacent to the property acquired by the defendant, for the purpose of restricting the defendant's purchase at sheriff's sale to the property as it was originally bounded and defined by the common mortgagor—their contention being that the defendant, as adjudicatee, at judicial sale, had taken possession of more ground than she was entitled to, and of buildings and edifices which were not covered by her act of mortgage, in the foreclosure of which she bought. Stated in more general terms, the object of that suit was to rectify the sheriff's title and dispossess the defendant of the buildings and edifices she claimed to have bought.

But this court rejected plaintiff's demands, and affirmed the validity of the defendant's title.

From the foregoing authorities, we are of opinion that the manifest destination which Fulham gave those several lots, at a time when he owned all of them, by the erection of the large and expensive dwellings thereon, was a consecration of the property to that and no other use or purpose, and an alienation thereof, equivalent to a continuous servitude thereupon; and that same constituted a *destination du pere de famille* in the sense of the code, which inhered in the title which was conveyed to the defendant by the sheriff's adjudication, under the foreclosure of the McCan mortgage which embraced the lots and their improvements.

The result of this conclusion is, that the defendant is entitled to have a continuous servitude on the land upon which the buildings stand, as well as upon the buildings and improvements themselves.

It is therefore ordered and decreed that the judgment appealed from be so amended as to decree the defendant to have a continuous servitude upon the land upon which the buildings and improvements stand, as well as upon the buildings themselves; and that as thus amended, the same be affirmed at the cost of plaintiff in both courts—all the rights of the first mortgagee, McQuade, being fully reserved.

## On Application for Rehearing.

BREAUX, J.   In the court below there was judgment in favor of the plaintiff for all the property that he claimed, subjecting same, in the particulars mentioned, to a servitude of use and habitation and of limited duration only, and taxed all costs against the defendant; in our opinion, we recognized the defendant's servitude upon the land occupied by the buildings and upon the buildings themselves, and decreed same to be apparent and continuous.

Having amended the judgment in this particular, our decree affirms the judgment appealed from in all other respects, and taxed the plaintiff with all costs of both courts.

The application for rehearing rests upon the following grounds, to-wit:

1.   That the court does not, either in its opinion or decree, recognize and pass upon the main demand of plaintiff, the lots of ground described in the plaintiff's petition.

2.   That the opinion and decree is an affirmance of the opinion and judgment of the District Court, yet the plaintiff who obtained judgment for his property in the District Court, though denied a portion of the claim set up by him, is condemned to pay the costs.

3.   That that portion of the decree proposing to amend the judgment of the District Court is surplusage, and though decreeing an amendment in terms, in legal effect and intendment, does not amend the decree of the District Court, only and except as to the question of costs.

4.   And because if the decree of the court, which is not in consonance with the reasoning of the opinion, be given the effect which the words will sustain, the plaintiff, Woodcock, is deprived of real property not affected by the servitude, simply because the defendant's right of servitude is recognized on a portion of the property; that is to say, the decree of the court is open to the interpretation that the court has given Baldwin, the defendant, a judgment recognizing a servitude on the whole of lot No. 4 (four), because by *destination du pere de famille* a small portion of the lot was destined to a servitude of support of a house on another lot.

Feeling assured, by the terms used in the decree, that the court did not contemplate or intend such injustice, the plaintiff *moves and prays this Honorable Court to grant a rehearing and to amend the decree, and to recognize and confirm the plaintiff's rights as owner of the*

64

*property described in his petition, and to limit the servitude which the court recognizes simply and only to the extent of its user.*

Again, in the course of their argument, counsel say:

"From the reasoning of the opinion of this Honorable Court, we understand that the purpose and intention of the court was to amend the judgment and decree of the District Court simply and only to the extent of removing the limit upon the servitude; that is to say, that the District Judge had limited the life of the servitude to the life of the buildings, but that your Honors are of opinion that the servitude had been acquired in perpetuity and that a servitude had been established on lot 4 (four) for the use of the house and to the extent that it was used for all time.

"And we cannot understand or believe that your Honors had intended to decree, or did decree, that the *whole* of lot four (4) was by this destination acquired by the owner of lot (5) in fee simple."

It was not the purpose or intention of either our opinion or decree to recognize defendant as having acquired servitude upon the *whole* of lot four (4) to which plaintiff claimed title; on the contrary, it was, in express terms, limited to that portion only, of lot four (4) which was occupied by defendant's buildings.

At page six (6) of our original opinion will be found the judgment of the District Court, reproduced in its entirety; and by our decree same is affirmed, unqualifiedly, except in one particular stated *supra.*

This is all the explanation that counsel of plaintiff requires, and it satisfies them in all respects except as to costs; and in that respect we think the plaintiff is entitled to have the original decree amended so as to leave the judgment of the lower court in respect to costs undisturbed—only taxing him with the costs of appeal.

It is therefore ordered, adjudged and decreed that our original decree be so amended as to tax the plaintiff with the costs of appeal alone; and that as thus altered, the same remains undisturbed.

Rehearing refused.

Mr. Justice Monroe takes no part as the case was reached and submitted prior to his appointment to this bench.