(34 South. 440.)

No. 14,104.

## WOODCOCK v. BALDWIN.*

(Nov. 17, 1902.)

RES JUDICATA—WHAT CONSTITUTES — SALE— WARRANTY OF TITLE—ESTOPPEL—PRESCRIPTION—PETITORY ACTION.

1. The doctrine of the common law courts that *res judicata* includes not only everything pleaded in a cause, but even that which might have been pleaded, does not obtain generally under our system.

2. In Louisiana the doctrine is much more restricted than in common law States. It is of statutory declaration and its scope and extent is defined and limited by the codal provisions of the law.

3. The authority of the thing adjudged takes place only with respect to what was *the ob-*

---

*Rehearing denied May 11, 1903.

*ject of the demand.* The thing demanded must be the same and the demand must be founded on the same cause of action.

4. A party who sells certain real property with warranty of title and with a guaranty against debts and claims is not estopped to claim from the vendee rents for the property growing out of his occupation of it prior to his purchase.

5. A petitory action claiming ownership of property and rents therefor is a continuous interruption of prescription, as to the claim for rents, until the final determination of the cause.

6. A possessor in good faith is accountable for the fruits of the thing possessed from the time the true owner makes demand for restitution.

Breaux, J., dissenting.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Thomas C. W. Ellis, Judge.

Action by E. E. Woodcock against D. G. Baldwin. Judgment for plaintiff, and defendant appeals. Amended.

E. Howard McCaleb, for appellant. Edward L. Simonds, for appellee.

BLANCHARD, J. Plaintiff's action is for the recovery of money due as rents or compensation for the detention, occupation and use by defendant of property belonging to him (plaintiff).

In September, 1896, defendant purchased at sheriff's sale certain property in the Square bounded by Napoleon avenue, Dryades, Baronne and Berlin Streets in the City of New Orleans.

The owner of the property so purchased had been W. F. Fulham, who had mortgaged it, and the sheriff's sale took place in foreclosure of the mortgage.

Fulham owned at the time other property in the Square and this other property he sold in October, 1896, to the plaintiff.

Fulham had improved the property he owned in the Square, erected houses, etc., but in doing so was not particular as to where he located the improvements with respect to the boundary lines of the lots into which the Square was subdivided. That is to say, it appears that some of the houses he erected would be partly on one lot and partly on another.

But he mortgaged the property by lots and the sheriff's sale, of course, followed this designation. It thus happened that when Baldwin, the purchaser at sheriff's sale, came to take possession, and Woodcock, the purchaser at private sale of the remainder of the property owned by Fulham in the Square, came to take possession, clash between them occurred.

Baldwin found that a residence supposed to be located on Lot 5, which he had purchased, was claimed by Woodcock to extend in part over on Lot 4 which he had purchased. And the same contention was made in respect to the house erected on Lot 8, which Baldwin had purchased. Woodcock claimed it extended over on a strip of ground adjoining which he had purchased.

So, too, as to certain out houses appurtenant to the residences Baldwin had purchased. It was claimed by Woodcock that the same were located on lots and parts of lots in the rear of such residences, which he had bought.

It seems Woodcock was seeking to assert his right of entry upon and possession of the property embraced within the description of his deed from Fulham, when he was arrested by injunction sued out by Baldwin.

In his petition for injunction Baldwin gave the description of the property he had purchased at the sheriff's sale and none other, and averred his possession of the premises, which possession, he said, was being disturbed and his title slandered by Woodcock.

His prayer was that Woodcock and his agent be enjoined from entering upon the premises described in the petition, from denying his (Baldwin's) title to same, from interfering with the fences as then located, from injuring any of the buildings, from disturbing his (Baldwin's) tenants, and that he (Baldwin) be maintained and quieted in his possession.

That litigation resulted in a judgment maintaining and perpetuating the injunction, prohibiting and restraining Woodcock from entering on any part of the property described in Baldwin's petition and from denying his title thereto, or disturbing his tenants in their possession thereof. The judgment further decreed that Woodcock had slandered Baldwin's title to the property described, and it was ordered that Baldwin be quieted in his possession of the same, "all without prejudice," says the judgment, "to the trial of title to property in the suit pend-

ing before Division 'A' of the Civil District Court between the same parties."

It seems that Baldwin's suit, as above, for injunction was followed, a few days later, by a suit by Woodcock against Baldwin, and this was the suit referred to by the judgment in Baldwin's case.

That counter suit of Woodcock was a petitory action to be declared the owner and put into possession of the property he had purchased from Fulham.

The petition declared that Baldwin, claiming to be owner of portions of same, had taken possession thereof and refused to recognize his (Woodcock's) right thereto, or to surrender him the possession thereof. It averred that for his detention of the property Baldwin owed him (Woodcock) rents in certain sums named.

The prayer was for judgment decreeing Woodcock the owner of the property described in the petition and putting him into possession thereof, and condemning Baldwin to pay rents as claimed in the petition.

The result of this suit in the District Court was that Woodcock was decreed the owner of the property described in his petition. The portion, however, of the house, located mainly on Lot 5, owned by Baldwin, which extended over on Lot 4, owned by Woodcock, and the portion of the house, located mainly on Lot 8, owned by Baldwin, which extended over on the adjoining strip of ground owned by Woodcock, were excepted from the operation of the judgment, and it was decreed that Lot 4 and the strip of ground aforesaid was subject in Baldwin's favor to the servitude of use and habitation to the distance that the two houses, respectively, rested upon said lot and said strip—this servitude to endure only so long as the houses remained standing and no longer.

With regard to Woodcock's demand for rents, the judgment in that case dismissed the same as in case of nonsuit, except as to those portions of the property decreed subject to the servitudes aforesaid. The demand for rents as to the excepted portions, while not in precise terms rejected, such undoubtedly was the intention of the judgment.

Baldwin appealed from the judgment thus rendered and the appeal was determined in this Court in May, 1899. (See 51 La. Ann. 990, 26 South. 46, where a full history of the controversy between these parties is given, and the issues more elaborately stated than is deemed necessary to state herein, and where a plat showing the properties and the divisional lines thereof acquired by Baldwin and Woodcock, respectively, is given.)

The result of the appeal was that the judgment of the court a qua was amended so as to make the servitude on the portion of Lot 4 occupied by the residence situated in the main on Lot 5, and the servitude on the portion of the strip of ground adjoining Lot 8 occupied by the residence situated in the main on said Lot 8, continuous, instead of limited to the life of the buildings.

It was not until the final determination of the suit last discussed that Woodcock was permitted to enter upon the possession of the property he had acquired from Fulham on October 10, 1896.

He obtained this possession on July 6, 1899.

The evidence establishes that defendant Baldwin had possession of the same until the last mentioned date, and it is for the rental value of the property during the time of his possession of it that this suit is brought.

From a judgment in favor of plaintiff for $238.45, Baldwin prosecutes this appeal, and in this Court plaintiff files answer to the appeal praying that the judgment appealed from be amended by increasing its amount to $2,628.85, which is the full amount sued for.

The exceptions interposed of no cause of action and want of right on part of plaintiff to stand in judgment have no force.

*Res judicata* was pleaded, the contention in this regard being that the judgment in the injunction suit heretofore referred to of Baldwin vs. Woodcock constitutes the authority of the thing adjudged.

We do not think the plea good for two reasons, (1) because the *only* property involved in that suit, and upon which the judgment therein rendered operated, was that purchased at the sheriff's sale, hereinbefore referred to, by Baldwin, the description of which property in Baldwin's petition did not include any part of the property of which Woodcock claimed to be owner; (2) because while Woodcock, who was a nonresident, might, if he had chosen, have set up in that suit by way of reconvention his claim of

ownership to the property he had purchased from Fulham and his claims for rents for its occupation by Baldwin, he did not do so, for his answer went no further than a general denial.

Instead, he filed a separate suit, which he had a right to do (Code Prac. art. 377), declaring on *his* cause of action, which was his ownership of certain property in the Square that Baldwin had taken possession of, and a demand for rents for its detention and use by Baldwin.

The doctrine of the common law courts that *res judicata* includes not only everything pleaded in a cause, but even that which might have been pleaded, does not obtain generally under our system.

Here in Louisiana the doctrine is much more restricted than in common law States. State of Louisiana v. The American Sugar Refining Co. (recently decided) 32 South. 965, 108 La. 603.

It is with us of statutory declaration and its scope and extent is defined and limited by the codal provisions of the law. Thus, Civ. Code, art. 2286, declares that the authority of the thing adjudged takes place only with respect to what was *the object of the demand.* The thing demanded must be the same and the demand must be founded on the same cause of action.

Besides, the very judgment now pleaded in bar distinctly declares that it is rendered without prejudice to the trial of title of property in the separate suit which Woodcock had brought against Baldwin and which was then pending. This reservation, while unnecessary, is held to include, also, Woodcock's demand for rents, for it was only upon the assumption of his ownership of the property that rents could be claimed.

Defendant Baldwin, by way of exception and answer, pleaded in the instant case that the plaintiff, Woodcock, is estopped in the demand he now makes for rent of the property, because of the fact that following the judgment rendered in the case of Woodcock v. Baldwin, 51 La. Ann. 990, 26 South. 46, wherein Woodcock was decreed owner of the property he therein claimed, he, Baldwin, had purchased from Woodcock certain of the property involved in that contest, and in the act of purchase it was declared that the sale is made with "a full guaranty from all debts, claims, mortgages, privileges, taxes, donations, alienations, or incumbrances whatsoever."

This sale to Baldwin was made some months before the institution of the present suit. It embraced, of the property Woodcock had sued for in the case reported in the 51 La. Ann. 989, 26 South. 46, only Lot 4 and the strip of ground fronting 10 feet wide on Berlin Street by 120 feet deep between parallel lines, and forming part of Lot 15.

The plea of estoppel is not good.

Woodcock in selling the property to Baldwin stipulated only the usual warranty of title, the usual subrogation to all rights and action of warranty, and the usual guaranty from all debts, claims, mortgages, privileges, taxes, etc., *affecting the property.*

What was guaranteed against was that the property sold would not be held subject in Baldwin's hands to any debts, claims, etc., against it put upon it by Woodcock, or arising against it while in his hands, or in the hands of those through whom the property had descended to him.

But the claim for compensation for the occupation and use of the property while the same had been held by Baldwin against the wishes of Woodcock, the true owner, was not a claim the property owed, or a debt against it. It was a personal debt Baldwin owed Woodcock. Baldwin had possessed himself of the property, and though Woodcock brought suit to vindicate his title to it and to gain possession of it, Baldwin all the time the litigation lasted, continued to hold possession of it and to make use of it.

When Woodcock finally secured a decree awarding him the ownership of the property, there at once arose a legal obligation on part of Baldwin to pay Woodcock what was the just rental value of the property during the time Baldwin had possessed and used it.

This was in no manner an obligation resting *on the property,* and hence, to be held included in the guaranty Woodcock gave to Baldwin when he sold to the latter.

Woodcock's guaranty to Baldwin cannot possibly be so construed as to embrace or include a personal debt that Baldwin owed to him.

Even if the estoppel pleaded were good it would extend, in its operation, no further than to embrace the claim for rent based on

the pieces of property sold to Baldwin. It would leave untouched and unaffected by it the demand for rents as to the other property.

Against the demand for rents as made by Woodcock, Baldwin pleads prescription of one and three years.

Neither are good. The suit of Woodcock v. Baldwin, 51 La. Ann. 989, 26 South. 46, interrupt prescription. Civ. Code, arts. 3518, 3551.

That was a suit, as we have seen, to test title to the very property for which rents are now demanded. Unless Woodcock made good his assertion of ownership he could claim no rents. The claim for rents, therefore, remained inchoate until ownership in Woodcock was established. It then matured. The suit was a continuous interruption until its final determination. Turner, Wilson & Co. v. McMain, 29 La. Ann. 298.

The judgment in that suit became final on May 15, 1899. The present suit claiming rents was filed less than a year thereafter, to wit:—on April 4, 1900.

In the former suit, while Woodcock had claimed certain rents, his demand therefor, as we have seen, was not passed upon. It was dismissed as in case of non-suit.

The language of the decree as to this was as follows:—

"Plaintiff's demand for rents as to all properties, except the parts thereof decreed subject to said servitudes, dismissed as in case of non-suit."

This was a reservation to Woodcock to thereafter claim rents from Baldwin on all the properties save that included in the servitudes recognized.

He now does so.

But, on part of Baldwin, it is claimed he was a possessor in good faith and owes no rent for the property so possessed. In support of this contention certain articles of the Code are cited. None of them, as applied to the facts of this case, bear out the contention.

Article 3451 does nothing more than define what is possession in good faith.

Article 3453 defines the rights peculiar to a possessor in good faith. One of these is the right to gather for his benefit the fruits of the thing without being bound to account for them to the true owner.

But the article goes on further to declare that the right to gather the fruits of the thing exists only *until it is claimed by the owner*, and that the exemption of the possessor in good faith from liability to account to the true owner ceases from the time the claim for restitution is made.

Now, when Woodcock filed his suit to be declared owner of the property (the case reported in 51 La. Ann. 989, 26 South. 46), it was *a claiming* by the true owner in the sense of the Article of the Code, and Baldwin's exemption from liability to account ceased from that moment. Brugere v. Heirs of Slidell, 27 La. Ann. 70.

Gillaspie v. Bank, 35 La. Ann. 779, cited by counsel for Baldwin, is not applicable.

The suit referred to was filed March 16, 1897, and defendant first pleaded to it March 19, 1897.

His liability for rents begins from that time.

The evidence establishes that Baldwin's house on Lot 8, as per the plat shown on page 996 of the 51st Annual, extends over on the strip taken from Lot 9 (which strip Woodcock owns) only about five or six inches, and that on Woodcock's portion of Lot 11, as shown on said plat, immediately in the rear of Lot 8, are certain out-houses appurtenant to the residence on Lot 8, which, excluding the five or six inches the house juts over on Lot 9, are worth from $20.00 to $25.00 per month. We will put the same at $20.00 per month. This is due from March 16, 1897, to July 6, 1899—a period of (say) 27½ months. On this item, then, the sum of $550.00 is due.

The evidence establishes the rental value of Lots 23 and 24, as per the plat referred to (that is to say, the portion of these lots owned by Woodcock in the rear of Lots 4 and 5), is from $15.00 to $20.00 per month. We will put it at $15.00. This is likewise due for 27½ months, and foots up the sum of $412.50 under that head.

On the rear part of Lots 11 and 12 as per plat named above, was a house which was under lease to Miss Wolfe at $12.00 per month. The entrance to this house was from Baronne street through or over a strip of ground twelve feet wide, owned by Woodcock, and forming part of Lot 23 and perhaps a part of Lot 24.

The evidence shows that Baldwin put up a fence across this strip and locked the gate that gave access to the house. He maintained that status pending the litigation, heretofore referred to, with Woodcock.

Miss Wolfe, under the advice of counsel, declined to pay Woodcock rent for the house on the ground that she was not being maintained in the peaceable possession of the premises.

Woodcock is now entitled to recover from Baldwin on account of this property $12.00 per month for 27½ months, or $330.00.

The evidence establishes that the rental value of Lot 4, as per the plat heretofore referred to, leaving out the portion covered by Baldwin's house which is situated in the main on Lot 5, is $20.00 per month. This for 27½ months is $550.00.

The evidence establishes that the rental value of that portion of Lot 15, as shown by the plat, owned by Woodcock, is from $8.00 to $10.00 per month. We will put it at $8.00. This for 27½ months is $220.00.

The evidence also establishes that Baldwin is due Woodcock $50.45, the value of one half of a divisional fence erected by Woodcock after notice to Baldwin.

These various sums aggregate $2,112.95, which Baldwin owes Woodcock, with legal interest from judicial demand.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from be amended by increasing the amount thereof from two hundred and thirty-eight & $45/100$ Dollars, principal, to Two Thousand, One Hundred and twelve & $95/100$ Dollars, principal, with legal interest from judicial demand, and that defendant pay costs of both courts.

BREAUX, J., dissents.