## INTERNATIONAL PAPER CO. v. MADDOX.

### No. 14296.

United States Court of Appeals
Fifth Circuit.

April 3, 1953.

Rehearing Denied May 6, 1953.

H. M. Holder, Shreveport, La., Geo. T. Madison and E. F. Madison, Bastrop, La., John H. Tucker, Jr., Shreveport, La., for appellant.

R. H. Lee, Benton, La., for appellee.

Before HUTCHESON, Chief Judge, and HOLMES and RIVES, Circuit Judges.

HOLMES, Circuit Judge.

This is an action by the appellee for temporary and permanent damages resulting to his property and his established fishing business by a continuing nuisance, maintained by the appellant in the operation of its paper mill in Webster Parish, Louisiana. He alleges that the effluent refuse matter from said mill drains into Bodcau Bayou; that this enormous quantity of waste water, aggregating about 12,000 gallons per minute, contains chemicals, fibrous matter, and other impurities, which completely destroy all plant and aquatic life in said bayou; and that the water therein, in consequence, has become devoid of oxygen, highly odorous, and unfit for fishing purposes, private or commercial. The court below awarded damages to the plaintiff, but denied an injunction restraining the defendant from any further operation of the mill. From this judgment the defendant appealed.

The appellant's specifications of error include the defense of a general denial that it has created or is maintaining any nuisance, and the pleas of release, estoppel, prescription, res judicata, excessiveness of damages, and accord and satisfaction. In ruling on the motion for a new trial, the court below said: "A steady fight, inch by inch, is made by the defendant company. It has zealous, persistent, and eminent counsel * * *. In [this] the second case we are doing for the defendant what its representatives have yet failed to do, and that is to pay Mr. Maddox once and for all. The defendant has so worked, by its sedimentation plans and manner of controlled discharge, that there is still fishing in Bodcau, but it is spotty and principally at the dam; importantly, it is distasteful fish to many for eating. Commercial fishing (buffalo) is practically extinct. If the fishing now were permanently and totally destroyed, we should be allowing the plaintiff at least $20,000, and not the sum of $5000. We have done our best. Of course, neither side is satisfied."

This action follows an earlier suit between the same parties, which is reported in Maddox v. International Paper Co., D.C., 47 F.Supp. 829; the same trial judge heard both cases. After the rendition of the judgment in the first case, the plaintiff and defendant therein entered into an agreement under the terms of which the defendant (appellant here) paid the plaintiff (appellee here) the amount of the judgment awarded by the lower court, plus the additional sum of $3000 for "any damages that might thereafter arise up to and including December 31, 1946." Plaintiff also granted the defendant (appellant herein) "full flowage rights across any and all property" owned by him, real and personal, "with full acquittance and release of any damages caused thereby up to and including December 31, 1946." After the expiration of the above period, the appellee on May 19, 1948, filed the present suit. In it he seeks permanent damages for the total destruction of his fishing camp and fishing business, loss of improvements, loss of value of camp sites, loss of profits for the years 1947 and 1948, and other items.

We think the plea of res judicata is not well taken. The pollution and its causes are recurrent or continuing nuisances; and actions for such temporary successive injuries from pollution are independent of one for pollution that is permanent in character. The first and second suits be-

**90**

tween these litigants are based upon separate causes of action, the first being for damages to appellee's business resulting from pollution within the then prescriptive period, and the instant suit being for permanent damages for its total destruction. There is a difference between a claim for total temporary damages and one for total permanent damages. The lower court so interpreted the appellee's demands, and the parties themselves recognized the distinction in the compromise settlement and release for three successive years ending December 31, 1946.

There is a maxim that one is so to use his own as not to injure another's property *(Sic utere tuo ut alienum non laedas).* It must be applied harmoniously with the maxim of *De minimis non curat lex,* but there is no question of the latter in this case; and the appellee had the right to presume that the appellant would abate this nuisance at the earliest practicable moment. This presumption was strengthened by the defendant's plea that it was engaged in continuous research for the purpose of controlling the waste disposal and reducing the waste content of the water discharged from its mills. During the war years (as claimed) it was unable to get delivery of certain needed equipment, but within the last three years it had secured this equipment and was completing the installation thereof, which greatly improved the situation, adding: "Respondent is continuing to make improvements" (R. 22).

The appellee alleged and the court below found that the first knowledge he had that the condition had become permanent was when appellant filed certain instruments by various owners on Bodcau Bayou granting flowage rights. It was stipulated that about 48 such instruments were filed, the first of these dating back to recordation on April 16, 1948. If appellant was still experimenting and spending considerable sums of money to solve its waste problems, the appellee could not have been expected to foresee the failure of these attempts. The recordation of these flowage easements constituted his first knowledge of apparent permanency, and this suit was filed May 19, 1948. The trial court did not err in refusing to apply a prescription date that would completely ignore the hopes and plans of all parties concerned for correcting the conditions as soon as materials became available.

The doctrine of *res judicata* in Louisiana is found in Art. 2286 of the LSA–Civil Code of Louisiana, which is as follows: The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same; the demand must be founded on the same cause of action; the demand must be between the same parties, and formed by them against each other in the same quality. The Louisiana doctrine is much more restricted than at common law. State ex rel. etc. v. City of New Orleans, 169 La. 365, 125 So. 273. Its scope is defined and limited by statutory declaration. Woodcock v. Baldwin, 110 La. 270, 34 So. 440; Smith v. Little Pine Lumber Co., 150 La. 720, 91 So. 165. It is *stricti juris,* and any doubt as to the identity of the two claims must be resolved in favor of the plaintiff. Bullis v. Town of Jackson, 203 La. 289, 14 So.2d 1, citing Hope v. Madison, 194 La. 337, 193 So. 666. See also Carter Oil Co. v. Jackson, 194 Okl. 621, 153 P.2d 1013.

The record in this case consists of five large volumes. It not only contains the judgment appealed from, but various long forms of requested judgments which the judge failed or refused to sign. After a patient hearing, the trial judge wrote the reasons for his decision in what seems to us to be a very sound opinion. We find no reversible error in anything that he said or did, and the judgment appealed from is affirmed. Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 51 S.Ct. 248, 75 L.Ed. 544; Shannon v. Shaffer Oil & Ref. Co., 10 Cir., 51 F.2d 878, 78 A.L.R. 851; Iselin v. C. W. Hunter Co., 5 Cir., 173 F.2d 388; International Paper Co. v. Busby, 5 Cir., 182 F.2d 790; Maddox v. Int. Paper Co., D.C., 47 F.Supp. 829; Busby v. International Paper Co., D.C., 86 F.Supp. 603; Busby v. International Paper Co., D.C., 95 F.Supp. 596; Wood-

cock v. Baldwin, 110 La. 270, 34 So. 440; Smith v. Little Pine Lumber Co., 150 La. 720, 91 So. 165; State ex rel. Puritan Co., v. City of New Orleans, 169 La. 365, 125 So. 273; Bullis v. Town of Jackson, 203 La. 289, 14 So.2d 1; Chamberlain v. Bruce Fur. Co., La.App., 29 So.2d 183; Durmeyer v. Streiffer, 215 La. 585, 41 So.2d 226; Carter Oil Co. v. Jackson, 153 P.2d 1013, 194 Okl. 621; 54 C.J.S., Limitations of Actions, § 169-c, p. 132; Am.Jur., Vol. 15, page 414, Sec. 23; LSA–Civ.Code, Art. 1934; LSA–Civ.Code, Art. 2286.

Affirmed.