### ADKINS v. CASON.

No. 5284.

Court of Appeal of Louisiana. Second Circuit.

Oct. 30, 1936.

Dan W. Stewart, of Minden, for defendant.

John T. Campbell, of Minden, for plaintiff.

HAMITER, Judge.

Plaintiff has instituted this suit against his former wife for the purpose of having himself decreed to be the owner of and entitled to the actual physical possession of an undivided one-half interest in and to a tract of land in Webster parish containing approximately 175 acres.

In the petition he alleges that the above interest is his separate property for the reason that it was acquired as a donation "cum onere" from his father, and that defendant is slandering his title thereto by claiming that it belonged to the community of acquets and gains that existed between them. He prays for recognition as owner of the property, and, in the alternative, should it be held that defendant is the owner of an interest therein, then for judgment against her for her pro rata part of the amount expended by him for the property out of his separate funds, or $750.

Defendant excepted to the petition as stating no cause or right of action, and then answered. The exception is not urged in this court, and we shall not discuss it. In her answer, she denies generally the substantial allegations of the petition on which plaintiff relies for recovery, and affirmatively asserts ownership of an undivided one-fourth interest in and to the tract of land. In this connection, she alleges that no division and settlement of the community of acquets and gains has ever been had. The prayer of her answer is for the rejection of plaintiff's demands, that she be recognized as the owner of the above claimed interest, and that plaintiff be required to account to her for all funds and revenues received by him from the property.

The case was tried on an agreed statement of fact which reads in part as follows:

"1. It is agreed that on November 8th, 1922 George W. Adkins, father of T. F. Adkins and E. L. Adkins, conveyed by authentic act passed before Coleman Lindsey, Notary Public, unto T. F. Adkins, husband

of Willene Roseberry, and E. L. Adkins, husband of Sybil B. Cason, the following described property, to-wit:

"West half of Northwest Quarter (W½ of NW¼) and West Half of Southwest Quarter (W½ of SW¼), Section 32, Township 23 North, Range 9 West; and all that part of Northwest Quarter of Northwest Quarter (NW¼ of NW¼), Section 5, Township 22 North, Range 9 West, lying North of Indian Creek, situated in Webster Parish, Louisiana, containing 175 acres, more or less, together with all improvements thereon and all rights thereto belonging, the consideration recited in said deed being Thirty-Five Hundred and no/100 ($3500.00) Dollars, cash in hand paid, a certified copy of said deed being annexed to this agreed statement of facts for the guidance of the Court.

"2. It is further agreed that the consideration recited in said deed was in truth and in fact not paid, but that at the time of the execution of said deed, and simultaneously therewith, the said George W. Adkins, grantor in said deed, required the grantees to execute an instrument reading as follows, the original thereof being recorded in Volume 70, Page 410 of the Conveyance Records of Webster Parish, Louisiana, to-wit:

" 'State of Louisiana, Parish of Webster

" 'We, T. F. Adkins and E. L. Adkins, do hereby acknowledge that we have this day received from George W. Adkins, our father, the sum of Fifteen Hundred Dollars ($1500.00) each, which is to be deducted from our interest in the settlement of the estate of our said father at his death.

" 'Signed in duplicate at Minden, Louisiana, in the presence of R. H. Lee and Coleman Lindsey, competent witnesses, on this, the 8th day of November, 1922.

" 'T. F. Adkins
" 'E. L. Adkins

" 'Attest:
" 'R. H. Lee
" 'Coleman Lindsey'

"It is further agreed that T. F. Adkins and E. L. Adkins in fact did not receive the $1500.00 cash, recited in said instrument, but received instead the lands described in the Paragraph 1 of this statement.

"It is further stipulated and agreed, that defendant objects to the admissibility of the facts recited in the Paragraph 2 of this agreed statement of facts, insofar as the evidence might tend to establish that the property described in Paragraph 1 was the separate property of T. F. Adkins and E. L. Adkins, and it is agreed that the Court shall pass on the admissibility of these facts when deciding this cause.

"It is further stipulated and agreed, that said facts are admissible for the purpose of showing the amount advanced out of the separate estate of the plaintiff, E. L. Adkins, to the community existing between him and the defendant, at the time of the execution of said deed, in accordance with Paragraph 13 of the plaintiff's petition.

"3. It is further agreed and stipulated, subject to the defendant's exceptions, pleas, and objections to the admissibility that after the death of George W. Adkins and in the settlement of his succession, the plaintiff, E. L. Adkins, was required by the remaining heirs of George W, Adkins to collate for the sum of $1500.00, as stated further in the instrument set out above in Paragraph 2 of this statement of facts; it is agreed that he actually did collate for $1500.00, received as hereinabove stipulated, by taking a lesser portion in the estate of George W. Adkins, to the extent of $1500.00, said collation being made in September, 1926.

"4. It is further agreed and stipulated that at the time of the conveyance referred to in Paragraph 1 of this statement of facts, E. L. Adkins was the husband of Mrs. Sybil B. Cason, the defendant in this cause, and that they were living in full community relation.

"5. It is further admitted and agreed, that on October 29th, 1923, the defendant, Sybil Sanders Cason, filed suit for a separation from bed and board from the plaintiff, E. L. Adkins, and for a petition and division of community property, which suit bears No. 4411 on the docket of this Court and the judgment therein rendered is annexed hereto and made a part of this agreed statement of fact.

"6. It is further admitted and agreed, that since the decree of separation from bed and board granted in the above styled cause, the said Mrs. Sybil Sanders Cason has at no time formally accepted or renounced the community property.

"7. It is further stipulated and agreed, that the plaintiff, E. L. Adkins, has been in possession of said property ever since the decree of separation from bed and board referred to above and has paid taxes thereon and has enjoyed the use and received the revenues therefrom including one-half the proceeds of the mortgage to the Federal Land Bank."

The judgment of the trial court rejected plaintiff's demands to be decreed the owner of the entire one-half interest, declared the property to belong to the community of acquets and gains formerly existing between the plaintiff and defendant, and recognized them as the owners of the property in equal proportions. It further decreed that the community estate formerly existing between the parties was indebted unto plaintiff, individually, as his separate property, in the sum of $3,000, with 5 per cent. per annum interest from September 14, 1926, and that plaintiff have judgment against defendant in the sum of $750 with 5 per cent. interest from September 14, 1926. All other demands of plaintiff and defendant were rejected, and the costs of suit were taxed against defendant.

From this judgment both litigants have appealed.

According to the oral arguments and briefs of counsel for the parties, the following questions are presented for determination:

1. Was the real estate at the time of its acquisition an asset of the community or was it the separate property of the husband?

2. If it was community property, has the defendant, Mrs. Cason, lost her interest therein either by reason of the judgment in the above-mentioned separation suit, or by her failure to accept the community estate within thirty days from the date of that judgment?

3. If it was community property, and the defendant is still possessed of her interest therein, is she indebted unto her husband, and is she entitled to an accounting for the revenues received and collected by him from the property?

The act of conveyance above mentioned in no manner recites or discloses that the property was acquired by plaintiff for his separate estate and benefit. It is a regular warranty deed executed in his favor and discloses a cash consideration of $3,500.

Under article 2334 of the Civil Code, "Separate property is that which either party brings into the marriage, or acquires during the marriage with separate funds, or by inheritance, or by donation made to him or her particularly."

In this state, the community of acquets and gains "consists of the profits of all the effects of which the husband has the administration and enjoyment, either of right or in fact, of the produce of the reciprocal industry and labor of both husband and wife, and of the estate which they may acquire during the marriage, either by donations made jointly to them both, or by purchase, or in any other similar way, even although the purchase be only in the name of one of the two and not of both, because in that case the period of time when the purchase is made is alone attended to, and not the person who made the purchase." Article 2402, Civil Code.

The jurisprudence of this state is replete with cases holding in effect that the provisions of the title under which real estate is acquired by the husband during marriage are the factors determinative of whether such property falls into the community or belongs to the separate estate of the husband.

In the case of Succession of Burke, 107 La. 82, 31 So. 391, 392, it was said:

"When, during marriage, a wife buys property with her separate paraphernal funds, intending the purchase to be an investment of such funds, it is not essential that the act of purchase should recite the fact that she is buying with her separate funds under her own administration, and for her sole account, and not that of the community, though it is advisable always that such declaration be made in the deed. Metcalf v. Clark, 8 La.Ann. 286. It suffices to put creditors and others on guard that the title is taken in her name, and, when put to the test, if she proves dehors the act that the funds used were her separate funds, the source whence derived, that the same were under her separate administration, and were used in the purchase as an investment for her separate account, her title will be maintained. The presumption of law, however, is that property bought during marriage in the name of either spouse falls into the community. This is elementary. But when the husband, during marriage, buys property in his name, intending it as an investment of his separate funds, to be held for his individual account, and not that of the community, it is essential that some indication of this intention, and of the character of the funds used, be given in the act of purchase. For the reasons of the law for the distinction made in this regard between purchases in the name of the wife and those in the name of the husband, see Hero v. Bloch, 44 La.Ann. [1032] 1036, 11 So. 821."

The case of Sharp v. Zeller, 110 La. 61. 34 So. 129, is authority for the

doctrine that property acquired by the husband during marriage belongs to the community unless the act of purchase contains the double declaration: (1) That it is bought with the proceeds of a sale of property belonging to himself individually. (2) That the purchase is made for his individual account, for the purpose of replacing the individual property which he had sold.

It is clearly pointed out in McWilliams v. Stair, 128 La. 752, 55 So. 343, that the husband, while living with his wife in community, must manifest a clear and distinct intention in the act by which property is acquired that such property was purchased with separate funds for his separate account; otherwise it becomes a part of the community.

The case of Succession of Andrus, 131 La. 940, 60 So. 623, 625, follows Sharp v. Zeller, supra.

In Succession of Watkins, 156 La. 1000, 101 So. 395, real estate was purchased by a married man from a corporation; the consideration therefor being stock of that corporation which he had acquired prior to his marriage and was his separate property. The deed contained no declaration that separate funds or property of the husband constituted the consideration of the purchase, and the court held that the real estate belonged to the community.

It was said in Succession of Fay, 161 La. 1022, 1028, 109 So. 824, 826:

"There is no contention that, when Fay acquired the property, the title to it vested in his separate estate. In fact there is no room for such a contention, since there is no declaration in the deed to the effect that Fay in acquiring the property, purchased it with his separate funds, and that the title to it should vest in his separate estate. A declaration to that effect in the deed by which the property is acquired, when the husband purchases, is necessary, in order to make the title vest in his separate estate; the mere fact that he has so purchased being alone insufficient to make the title so vest. Succession of Goll, 156 La. 910, 101 So. 263."

The case of Schoeffner v. Schoeffner, 163 La. 142, 111 So. 655, 656, involved litigation between husband and wife arising out of the dissolution of the community of acquets and gains by a judgment of separation from bed and board. The defendant husband, during the marriage,

had acquired certain real property under a deed which recited a cash consideration. In reality, however, the property described was obtained in settlement of his claimed interest in the estate of his deceased sister. The court held that the real estate was an acquisition of the community.

The cases of Succession of Watkins, and Schoeffner v. Schoeffner, both supra, are spoken of approvingly in Smith v. Gloyd, 182 La. 770, 162 So. 617.

Plaintiff's energetic counsel, in his oral argument and well-considered brief, contends that the provisions of the above-quoted separate instrument should be read and considered as part and parcel of the deed under which the property was conveyed to plaintiff, and that when this is done the transaction will be shown to be a donation in disguise. He calls attention to that part of the opinion of the Schoeffner Case which reads:

"The situation might have been different in this case if the deed had recited the real and true consideration."

■ The instruments in question are entirely separate in every respect. Neither refers to a donation nor makes mention of the other in any manner. One shows an ordinary conveyance of the land to the husband and his brother for a cash consideration of $3,500. The other is a mere acknowledgment by the brothers of receipt from their father of $1,500 each, and the stipulation that such amounts are to be deducted from their interest in the settlement of their father's estate. The deed was recorded in the Conveyance Records of Webster Parish on November 8, 1922, while the receipt was recorded on January 29, 1926. Even if the instruments were considered together, a donation would not be revealed. To conclude that a donation was intended and effected by the instruments, there must also be considered the additional fact that plaintiff and his brother did not receive the $1,500 each, but accepted the land described in the deed in lieu thereof. This fact, which is not shown by the instruments or other documentary evidence, is recited in the agreed statement of facts on which the case was tried, and the proof thereof must be deemed to be made by parol. Its admissibility as evidence is objected to by defendant's counsel in so far as it tends to vary, contradict, or alter the recitals of the deed, and we are of the opinion that the objection is well founded. In the case of Succession of Andrus, supra, it was said:

"As the title of Joseph Christ does not on its face indicate any intention to reinvest his separate funds for his separate benefit, the purchase in question must be considered as having been made for the benefit of the community.

"The parol evidence adduced in the court below to prove the intention of the husband to reinvest his separate funds for his individual benefit should have been excluded."

Therefore, for the purpose of determining the issues here presented, the act of conveyance must be considered separately and independently from the private writing. In Schoeffner v. Schoeffner, supra, it was said:

"As stated, instead of reciting the facts to show the real consideration, the deed on its face shows a cash consideration. The property therefore must be regarded as an acquisition of the community."

■ And viewing the deed in the case at bar in the light of the aforediscussed authorities, the property must be deemed to be that of the community. We say, as did the Supreme Court in the Schoeffner Case, that a different situation might be presented if the instrument conveying the property had recited the true status of the transaction.

We shall now seek to determine whether or not this defendant was precluded by the judgment in the separation suit from claiming her interest in the property. In that suit, she sought a separation from bed and board, the taking of an inventory, and a partition and division of the community property. The proceedings therein, which are made a part of the record of this case, do not disclose that an inventory was taken, nor do they refer in any manner to the property in question. As no appearance was made by the husband, Mrs. Cason obtained a judgment by default on April 15, 1924, decreeing a separation from bed and board, and that she should receive in partition certain movable property named in the judgment. All of her other demands were rejected.

In urging that Mrs. Cason's claim is now barred by the judgment in the separation suit, plaintiff's counsel invokes the doctrine of res judicata. The principal codal provision of our law embracing this doctrine is article 2286 of the Civil Code, and reads:

"The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same; the demand must be founded on the same cause of action; the demand must be between the same parties, and formed by them against each other in the same quality."

The Supreme Court in Woodcock v. Baldwin, 110 La. 270, 275, 34 So. 440, 441, stated:

"The doctrine of the common law courts that res judicata includes not only everything pleaded in a cause, but even that which might have been pleaded, does not obtain generally under our system.

"Here in Louisiana the doctrine is much more restricted than in common law States. State of Louisiana v. The American Sugar Refining Co. (Recently decided) 108 La. 603, 32 So. 965."

It was stated, in West v. His Creditors, 3 La.Ann. 529, that the plea of res judicata was stricti juris.

Woodcock v. Baldwin, and State v. American Sugar Refining Co., both supra, are cited approvingly in State ex rel. Puritan Co., Ltd., v. City of New Orleans, 169 La. 365, 125 So. 273.

■ We are convinced that the court did not give consideration to the property herein involved in ordering a partition of the effects of the community. The fact that no inventory whatever is contained in the record of the separation suit and that all of the proceedings, including the judgment, are silent with reference to real estate, is the basis for this conviction. If the question of ownership of the property had been in contest therein, certainly an adjudication on its title would have been shown in the court's decree. Taking cognizance of the principle that the plea of res judicata is stricti juris, and being of the opinion that a partition of the litigated interest was not an object of the judgment in the separation suit, we must necessarily hold that Mrs. Cason did not lose the rights, by reason of such judgment, which she herein asserts.

The next question presented is: Did the failure of Mrs. Cason to accept her interest in this community property within thirty days after the finality of the judgment of separation forever bar recovery by her of such interest?

When that judgment was signed and became final in the year 1924, the jurisprudence of this state was to the effect that unless the wife accepted the community within thirty days after the dissolution of the marriage by a judgment of separation from bed and board or divorce, she was

deemed to have renounced it. Wand v. Wand, 155 La. 257, 99 So. 211; Giglio v. Giglio, 159 La. 46, 105 So. 95; Cuselich v. Cuselich, 159 La. 652, 106 So. 20; and many other cases. That jurisprudence was founded on the provisions of article 2420 of the Civil Code.

However, the Supreme Court, in the case of Phillips v. Phillips, 160 La. 813, 107 So. 584, 586, decided during the year 1926, with Mr. Chief Justice O'Niell furnishing a thoroughly enlightening and interesting opinion, held that article 2420 of the Civil Code had been abrogated by Act No. 4 of 1882. Under that act the wife was allowed, when the marital community was dissolved by a decree of separation from bed and board or by divorce, or by the death of the husband, the right to accept the community under the benefit of inventory "in the same manner and with the same benefits and advantages as heirs are allowed by existing laws to accept a succession under the benefit of inventory." By reason thereof it was judicially determined that a wife under such circumstances is no longer presumed to have renounced the community by her failure to accept it within thirty days after the decree of separation or divorce was rendered, and that the husband, like any creditor of the community, had the right at the expiration of the thirty days to sue to compel the wife to say whether she accepted or renounced it.

In the later case of Conrad v. Conrad, 170 La. 312, 127 So. 735, the Supreme Court recognized the doctrine of the Phillips Case, and held that a wife who sued first for a separation and then for a divorce, without asking in either petition for a partition of the community property, was not precluded from subsequently seeking such partition.

Plaintiff's counsel, in his brief, gives recognition to the holding in the Phillips Case, and then states:

"However, in 1930, the Supreme Court of Louisiana had this very question before them in the case of Lyons v. Veith, 170 La., pages 915 et seq., [129 So. 528]. In that case the Court, with Judge Land as the organ, held that the effect of Phillips v. Phillips was to reverse the entire jurisprudence on the subject, since the Supreme Court had repeatedly held that Act No. 4 of 1883 did not have the effect that was given to it in the Phillips Case, and that such a radical change in judicial construction was not retroactive, and that it had no application to those cases arising prior to 1926.

The Court will bear in mind that the decree here involved was rendered in 1924."

It is true that the opinion in the Lyons Case states:

"This court in no wise departs from the holding in Phillips v. Phillips, 160 La. 813, 107 So. 584, that the wife separated from her husband is not presumed to renounce the community by failure to formally accept within 30 days after the decree of separation; but merely holds, in this opinion, that the Phillips Case is not retrospective in its effect."

However, this court, in Blunson v. Knighton, 140 So. 302, 306, had occasion to consider the Lyons Case in its relation to the Phillips Case. With Judge Palmer writing the opinion, we therein stated:

"A distinction between the Phillips Case and the Lyons-Veith Case clearly exists. As we have said, the Phillips Case was between husband and wife and was given a retrospective effect, while in the Lyons-Veith Case the plaintiff, seeking to enforce a contract of sale of real estate, had acquired his title under a contract of sale, depending upon the correctness of the judicial construction then prevailing on article 2420 of the Civil Code, and it is properly held that the rule laid down in the Phillips Case should not apply, as it relates to the retrospective effect of the doctrine. While the Supreme Court did not expressly recognize the distinction we are here making between these cases, yet it occurs to us that a fair consideration of the two opinions will show that there was recognized this distinction. All the authorities quoted in the Lyons-Veith Case sustaining the view that the doctrine enunciated in the Phillips Case should not have retrospective effect involved only instances where the rights affected were acquired under contract. No cases were cited where this question is between husband and wife.

"In the case at bar the husband and wife are dead, although the husband did not die until after he had filed his answer in this case. The plaintiff is the sole heir of the wife, while the defendant is the sole heir of the husband, they each having accepted the succession, therefore they are before the court in this case entitled to the same rights, and bound by the same restrictions, that would have governed were the husband and wife the parties to the suit."

■ We reaffirm the holding in the Blunson Case with reference to the question un-

der discussion, find the reasoning in the opinion of that case to be applicable to the case at bar, which involves an action between a husband and his former wife, and conclude that Mrs. Cason did not renounce her interest in the property by failing to accept within the specified time.

 We pass to another question to be determined: Is the husband a creditor of the community, and consequently of his wife?

The agreed statement of facts shows that the husband was compelled to collate in the settlement of his father's succession, because of the acquisition of the real estate, by taking a lesser portion to the extent of $1,500. The property having fallen into the community, and plaintiff's separate estate having been lessened to the extent of the value of such property, it may be said that the community was enriched at the expense of plaintiff's separate estate.

Numerous cases are to be found in our jurisprudence holding that the community is indebted to the husband's separate estate in the amount and to the extent of his separate funds expended in acquiring property which became a part of the community. Succession of Andrus, and Schoeffner v. Schoeffner, both supra; Succession of Goll, 156 La. 910, 101 So. 263; Daggett's, The Community Property System of Louisiana, p. 141. Accordingly, this question is answered in the affirmative.

The judgment of the trial court decreed that the community estate is indebted unto plaintiff, individually, as his separate property, in the sum of $3,000, and that the amount due him by Mrs. Cason was $750. The first amount mentioned is obviously incorrect. It should read $1,500 for the value of plaintiff's interest in the property was that amount. The judgment should be amended to this extent. The item of $750 due by defendant is sustained by the record and is correct.

 In her answer, defendant prays "that the said E. L. Adkins be required to account for all funds received by him and ordering him to pay to your defendant such sums as may be found due." The judgment rejected her demands in this regard, but, as before stated, she has appealed. The plaintiff, no doubt, was a possessor in good faith. He had just reason to believe himself the master of the property which he possessed. Article 3451, Civil Code. The good-faith possessor must account for the fruits of the property possessed from the time the true owner judicially demands restitution. Article 3453, Civil Code; Blair v. Dwyer, 110 La. 332, 34 So. 464; Roussel v. Railways Realty Co., 165 La. 536, 115 So. 742. Mrs. Cason judicially sought restitution of such revenues when she filed her answer on December 15, 1935, and she is entitled to an accounting, in so far as her interest is concerned, from that date.

It is therefore ordered, adjudged, and decreed that the judgment of the trial court be amended by decreeing the community to be indebted unto plaintiff's separate estate in the amount of $1,500, instead of $3,000; that said judgment, in so far as it rejects defendant's demands for an accounting, is reversed, and the case is remanded for the sole and restricted purpose of ordering defendant to account to plaintiff for one-half of any and all revenues received by him from said undivided one-half interest since December 15, 1935; and that, in all other respects, the judgment is affirmed. Costs of the appeal shall be paid by plaintiff.