Defendants, Mr. and Mrs. Joseph Campisi, appealed from a judgment of the First City Court of New Orleans condemning them to pay to plaintiff, Anna May Meibaum, $125, with interest and costs, to compensate her for personal injuries sustained when, on February 9, 1943, a truck, driven by her brother and in which she was a passenger, came into collision with a Chevrolet automobile owned by the community of acquets and gains existing between Mr. and Mrs. Campisi and being driven at the time by Mrs. Campisi.
While defendants originally contended that there was no liability at all in either of them for the reason that Mrs. Campisi was not in any way at fault, they now concede that the record shows that there was negligence on her part and they further concede that any negligence on the part of plaintiff's brother could not, as a matter of law, be imputed to plaintiff, and they therefore admit that the judgment, insofar as it condemns Mrs. Campisi, is correct.
Therefore the only issue which is left for our consideration is the contention of Mr. Campisi that at the time of the accident Mrs. Campisi was carrying out a purpose purely personal to her, in which the community was not interested and was using the automobile belonging to the community without the knowledge or consent of Mr. Campisi, the head and master of the community, and, in fact, contrary to his general instructions, that she was not to use the automobile.
The accident occurred at the corner of Prytania and Marengo Streets. The Campisi car was being driven on Marengo Street towards the Mississippi River. On the front seat alongside Mrs. Campisi was a small coffee table. According to Mrs. Campisi's testimony, she had been to lunch at a restaurant near the business section of New Orleans, and was on her way to visit "a girl friend" who lived "on Nashville, near Magazine or Tchoupitoulas" which was in the general direction in which she was going.
She says that the coffee table had been given to her as a wedding present and was therefore her separate property, and that "a day or so before the accident", it had *Page 258 
been placed in the car by her husband, who, at that time, intended to take it to a repair shop, but who did not do so, but left it in the car so that he might take it later on. She also says that when she departed from home she left the table in the car because of the possibility that while she was on her way to or from the restaurant, she might pass near a repair shop, and might therefore find it convenient to leave the table for repairs.
Mr. Campisi confirms his wife in all of her statements and says in addition that he never permitted her to drive the car, did not authorize her to take the table to the repair shop, and did not know that she had taken the car on that occasion. He admits that he did know that on prior occasions she had used the car without his authority, and he says that on other occasions since she has used the car. He adds that she is not a good driver.
Even though the table, having been given to Mrs. Campisi as a wedding present, was her separate property, we entertain no doubt that, since it was being used in the home, had been broken while being so used, and was to be repaired so that it might be again used as a part of the furniture of the home, in repairing it, a community purpose was being served and that therefore if Mrs. Campisi, with the express or implied consent of her husband, left home for the purpose of taking the table to the repair shop, she was on a community errand at the time of the accident.
But she says that her principal purpose in making the trip was to take lunch at the restaurant and that the repairing of the table was only in her mind as a possible incidental purpose. Defendants contend from this that the facts bring the case within the doctrine followed by our brothers of the Second Circuit in Ætna Casualty Surety Co. v. Simms, et ux., 200 So. 34, in which they concluded that in order to hold a husband, as head of the community, liable for the torts of the wife in negligently operating a community automobile, it must appear that the principal or primary purpose being accomplished at the time is the performance of a service for the community, and that if the community service is "merely incidental or secondary to the main object," this is not sufficient to render the husband liable. In so holding, that court followed what seems to have been the holding of the Supreme Court in Adams v. Golson, 187 La. 363,174 So. 876, 879, in which that court, after discussing the possible effect of negligence of a wife while driving the community car to or from a restaurant for a meal, held that whatever may be the legal effect of such a trip, under the facts shown in that case the going to the restaurant had not been the primary object of the wife in making the trip but that the primary object had been a purely personal pleasure trip of the wife. The court said: "* * * The taking of her evening meal there was merely a matter of convenience to her and incidental to the main object of her use of the automobile on that day. * * *" In discussing whether a wife, in going to a restaurant for a meal, is on a mission for the community, the court said: "* * * While it is true that the husband is bound to supply his wife with the necessaries of life, which include her meals, the record does not show that it was the husband's customary way of providing Mrs. Golson with her meals, or that he had failed or refused to provide for her meals at home. * * *"
We find it difficult to reconcile our concept of the duties and obligations of the members of the Louisiana community towards each other, with the idea that a wife in going to or from a restaurant for a meal is not serving a community purpose, but of course feel obliged to accept that idea as established by the decision in Adams v. Golson, supra. In that opinion the court said: "* * * it would have to be shown affirmatively that she was expressly or impliedly authorized to and was, at the time of the commission of the act, actually attending to the affairs or business of the community."
We feel that since the wife is under the obligation of arranging for the family meals and determining where it would be best that these meals be obtained, she is "actually attending to the affairs or business of the community" when she goes to a restaurant to obtain a meal for herself, having determined that for reasons best known to her, that is the best place for the obtaining of that particular meal; that is, of course, provided it be not shown that the husband had objected to her going to the restaurant or had instructed her not to do so. It must be conceded that if there has been a positive objection by the husband, there cannot have been the express or implied authority which is necessary if the husband is to be held liable. But, as we have said, though we find our views on *Page 259 
the subject somewhat contrary to those expressed in Adams v. Golson, we realize our obligation to follow that decision as we understand it, and therefore have concluded that if the primary purpose of Mrs. Campisi in making the trip was to take the meal in the restaurant, and the possible visit to the repair shop was only secondary, then there should have been no judgment against the husband. And that even if the trip was primarily for the purpose of visiting the repair shop, still the husband, as master of the community, could not be held liable if he had expressly instructed his wife not to make the trip. And the cases cited so clearly establish the doctrine already discussed, that the husband cannot be held liable unless there has been express or implied authority, that we conclude that the judge a quo could not have decided as he did if he believed that Mr. Campisi had instructed his wife not to use the car. There is in the record evidence from which our brother below might have concluded that Mrs. Campisi, in making the trip, had as on of her primary objects the repairing of the table, and that Mr. Campisi must have known that Mrs. Campisi used the car on other occasions, and intended to make that particular trip.
In the first place, the testimony of Mrs. Campisi taken in the court below is somewhat evasive, and she enters upon a rather extensive discussion of where and when she had obtained the table, and how it had been broken before she finally said why the table was in the automobile; that she had merely left it there because of the possibility of visiting the repair shop.
She testified that there was no special place to which the table was to be taken, but merely thought that possibly she might pass some repair shop as she was driving around the city. Her husband did not corroborate her in this, but said that he had a definite place to which the table was to go and had 'phoned and made arrangements at that place.
There had been a trial in the Criminal Court and at that time Mrs. Campisi had not known and had not ascertained that the purpose of the trip might be of great importance in the determination of this civil matter. When asked: "Where were you going with that coffee table?" she answered: "I was going to have it repaired."
It is difficult to believe the testimony of Mr. Campisi that, although he had told his wife that she was not to use the automobile, she had used it on other occasions and still continues to use it.
At any rate, what may have been the primary object of Mrs. Campisi in making the trip, and whether it was expressly or impliedly authorized, are questions of fact. The trial court has resolved those questions against Mr. Campisi, and we conclude that the record does not warrant a reversal on those questions of fact.
The judgment appealed from is affirmed at the cost of appellants.
Affirmed.