103 So.2d 910 (1958)
Robert S. HART et al., Plaintiffs-Appellants,
v.
James E. HARDGRAVE et ux., Defendants-Appellees.
No. 8797.
Court of Appeal of Louisiana, Second Circuit.
March 25, 1958.
On Rehearing June 20, 1958.
*912 Lunn, Irion, Switzer, Trichel & Johnson, Shreveport, for appellants.
Cook, Clark, Egan, Yancey & King, Shreveport, for appellees.
HARDY, Judge.
This is a suit for the recovery of damages resulting from an automobile collision between a 1955 Chevrolet automobile owned by Continental Supply Division, Youngstown Sheet & Tube Company, driven by Robert S. Hart, and a 1954 Chevrolet automobile owned by James E. Hardgrave and driven by his wife, Myrtle D. Hardgrave. The plaintiffs are Hart, Continental Supply and the latter's workmen's compensation insurer, Consolidated Underwriters. Named as defendants are James E. and Myrtle D. Hardgrave, husband and wife. Plaintiff, Hart, sought judgment in the sum of $9,500, representing damages for alleged pain and suffering, past and future, disfigurement and possible impairment of earning capacity. Plaintiff, Continental Supply, prayed for judgment in the sum of $579.77, representing damage to its Chevrolet automobile, which amount was stipulated by counsel, on trial, as the correct estimate of damage. Consolidated Underwriters prayed for the recovery of $55 as medical expenses, an additional sum of $245 allegedly paid as a compromise of plaintiff's compensation claim, together with $20 as cost of effecting the settlement of said claim.
From a judgment in favor of defendants rejecting plaintiffs' demands, all plaintiffs have appealed.
In this court defendants-appellees have filed a motion to dismiss this appeal, in which pleading they alternatively asked that the case be remanded to the district court.
We proceed first to a consideration of defendants' motion, which is predicated upon allegations of fact incorporated therein setting forth that in a civil action in the United States District Court for the Western District of Louisiana, Shreveport Division, these defendants, James E. Hardgrave and Myrtle D. Hardgrave, as plaintiffs, in an action against Consolidated Underwriters as liability insurer of Robert S. Hart, recovered judgment in the principal sum of $13,500, which judgment was subsequently compromised and settled, and, as a consequence, the said action in Federal Court, on joint motion of counsel, was ordered dismissed with full prejudice to all claims of the said plaintiffs arising from the automobile collision which is the basis of the suit now under consideration by this court, on appeal.
First, it is to be observed that the factual allegations which are the basis of defendants' motion are not controverted and therefore must be accepted as true. Carpenter v. Madden, 233 La. 840, 98 So.2d 209; Carpenter v. Madden, La.App., 94 So.2d 699; Attaway v. Melton, La.App., 88 So.2d 417; State ex rel. Payne v. Irion, 163 La. 1019, 113 So. 360.
Defendant's motion, which is in effect a plea of res judicata based upon a settlement in accord and satisfaction of a judgment with one of these plaintiffs, could not, under any possible theory, be considered as binding upon the other plaintiffs in this action, who were not parties to the suit in the Federal Court. However, as against the plaintiff, Consolidated Underwriters, we think the plea of res judicata is good, for the motion to dismiss specifically evidences the intention of the parties thereto to terminate all disputes between them, arising from or growing out of the automobile collision of September 10, 1955, which is the basis of the present action. Our conclusion might be otherwise if Consolidated Underwriters, one of the plaintiffs *913 in the instant case, had prayed for payment of its claim by preference and priority out of any amount awarded in favor of the plaintiff, Hart, For this relief, however, the plaintiff, Consolidated Underwriters, did not pray, but, to the contrary, it prayed for judgment against the defendants for the principal sum of $320. In view of the settlement of all claims as between Consolidated Underwriters and these defendants it is quite evident that the rights of these parties as between one another have been finally adjudicated and such adjudication has been fully satisfied.
For these reasons the motion to dismiss the appeal, insofar as it is directed against the plaintiffs, Hart and Continental Supply, is overruled. As to the plaintiff, Consolidated Underwriters, the motion to dismiss the appeal is sustained.
The accident occurred about mid-afternoon of September 10, 1955, on Highway No. 1 which is also known as North Market Street, just outside the limits of the City of Shreveport, at the point of intersection of a cross-over connecting the two paved lanes of the highway designated for northbound traffic with similar lanes for the accommodation of southbound traffic. The cross-over between the twelve or fourteen feet neutral space between the lanes of traffic is located opposite a gasoline service station on the west side of the highway. At the time of the collision the defendant, Mrs. Hardgrave, was driving her car north, followed by the car driven by Hart proceeding in the same direction. Hart had turned into the inside northbound traffic lane some two blocks south of the point of collision. Plaintiff, Hart, alleged and testified that as he proceeded northbound on the inside traffic lane of the highway he overtook the Hardgrave car, which was moving north in the outside or easternmost lane of travel; that he signaled his intention of passing by blowing his horn, despite which, when he was within a few feet of the rear of the Hardgrave car, the driver thereof, Mrs. Hardgrave, turned her vehicle to the left immediately into the said plaintiff's lane of travel; that in a vain effort to avoid the collision he turned his car sharply to the right, striking the left rear of the Hardgrave car with the right front of his vehicle; that he was thrown forcibly against the steering wheel and dash of his car, lost control thereof, and the vehicle came to rest against a cyclone fence enclosing private property on the east side of the highway at a point established to have been some 150 feet, more or less, from the point of impact.
In direct contradiction of plaintiff's version of the occurrence Mrs. Hardgrave testified that she was proceeding in the left lane for a distance of approximately a block and a half before reaching the cross-over, during which time she signaled by the use of her directional blinker lights the intention of making a left turn, and that her automobile was struck forcibly in the rear before she made any actual turning movement off of the highway.
Certain material facts, fortunately, were definitely established, namely, that Mrs. Hardgrave suffers from partial deafness and that she never did at any time observe the approach of Hart's automobile from the rear.
The testimony of a State Trooper, who investigated the accident within a few minutes time after its actual occurrence, located the point of impact as being near the center of the northbound highway lanes, which point was established by the tire marks of the Hardgrave car which was moved some twenty feet north and turned completely around by the force of the impact and came to rest in the neutral ground, just to the west of the northbound traffic lanes, facing south.
The Trooper further testified that after the accident he questioned both parties, but this is squarely denied by Mrs. Hardgrave, who testified on trial that her only conversation with the Trooper occurred after she was removed to the P. & S. Hospital in Shreveport. In this connection it is pertinent to note that Mrs. Hardgrave's testimony on trial substantially differs in a number *914 of material particulars with a question and answer statement which she gave to the insurance investigator two days following the accident. This question and answer statement was transcribed by Mr. Ray J. Hanrahan, a court reporter, whose testimony on trial verified the transcript.
Adverting to the charges and counter-charges of negligence between the parties as specified in their pleadings, it is noted that plaintiff alleged negligence against Mrs. Hardgrave in that (a) she turned to the left across the highway without giving adequate signal of her intention; (b) she failed to observe traffic to her rear before making a left turn; (c) she attempted to make a left turn from the outermost right hand lane; (d) she failed to have her automobile under proper control, and (e) she failed to heed the warning given by Hart of his intention to pass.
Without the necessity for detailed discussion we conclude that the charges identified under (a), (b), (c) and (e) were adequately established. The testimony of the State trooper with reference to the tire marks of the Hardgrave car definitely fixes the position of the said vehicle in or near the center of the highway and not in the inside westerly lane as testified by Mrs. Hardgrave. The testimony of Mrs. Hardgrave herself is positive that though she made observation to her rear she did not see the approaching Hart car and did not know of its presence until the occurrence of the collision. No reason can be ascertained which would explain Mrs. Hardgrave's failure to perceive the approach of the Hart vehicle if, indeed, she attempted to make observation to her rear, and it follows that she was guilty of negligence in not seeing that which could and should have been seen. The conclusion that Mrs. Hardgrave turned to her left from the outside lane is justified by the clear testimony of the plaintiff, Hart, on this point, corroborated by the physical evidence of the tire marks to which reference has been made above. Unquestionably, Mrs. Hardgrave failed to hear the horn signal which Hart testified he gave prior to making the attempt to pass and this failure is clearly accounted for by Mrs. Hardgrave's infirmity of hearing.
Defendant's answer charged Hart with negligence in (a) driving at an excessive, etc. speed in a congested area; (b) failing to keep a proper lookout; (c) failing to heed the signals for a left turn; (d) driving at a speed in which he was unable to stop and avoid injury and damage; (e) failing to brake or slow his vehicle in time to avoid the accident, and (f) failing to turn his car to the extreme right where he had ample room to pass defendant's car.
After careful examination of the record we cannot find that any of these charges have been acceptably established. It was not shown that Hart's speed was excessive or dangerous. The only testimony as to speed is of that of Hart, who asserted he was driving about 35 miles per hour. An attempt was made on the part of other witnesses to estimate the speed on the basis of the apparent violence of the impact but this inexpert opinion evidence failed to carry any substantial weight. It is true the State Trooper testified that the area in which the accident occurred was regarded as a congested area within which a speed above 35 miles would be considered dangerous. Despite this testimony we find nothing in the record which is sufficient to establish the slightest basis for a conclusion that the speed of Hart's automobile had any connection with the accident. It is further to be noted that, insofar as is established by the record, the legal speed at the point and at the time of the accident was fixed at 60 miles per hour. Finally, we are convinced that the speed of the Hart vehicle at the time could not be concluded as having exceeded the possible brackets of 35 to 40 miles per hour. The mere fact that the Hart car traveled some 150 feet following the impact is indicative of nothing in this connection, for the driver was incapacitated and the car was completely out of control. There is not the slightest ground for the charge that Hart was careless in his observation *915 or that he failed to heed the signals for a left turn. On this latter point there is considerable doubt by reason of the conflict between Mrs. Hardgrave's sworn testimony and her transcribed statement as to when and where she actually attempted to signal for a left turn, for, in the statement to which reference is made, she repeatedly declared that she applied her brakes and put on her blinker lights just as she was turning at the intersection of the cross-over. These statements are irreconcilable with her sworn testimony. Finally, we think Hart's testimony, substantiated by the location of the points of physical damage to the cars involved, establishes his effort, by turning, to attempt to avoid the collision. Due to the negligent actions of the driver of the Hardgrave car this action was futile.
Defendants filed supplemental and amended answer in which they added an additional charge of negligence against plaintiff, Hart, on the ground that he was driving while under the influence of intoxicating liquors, etc. The charge of intoxication against the plaintiff, Hart, is completely unsupported by proof and deserves no further consideration nor comment.
Upon the basis of our evaluation of the established facts we are firm in the opinion that the collision was due solely and directly to the negligence of the defendant, Myrtle D. Hardgrave.
As has been noted above, the amount of the claim of plaintiff, Continental Supply, for damages to its automobile was stipulated in the sum of $579.77 and judgment should be entered accordingly.
The grounds upon which plaintiff, Hart, bases his claims for damages were itemized in his petition as follows:

"Pain and suffering in the past $2,500.00
Pain and suffering in the future 1,000.00
Disfigurement 1,000.00
Possible impairment of earning capacity 5,000.00
 _________
 Total $9,500.00"

Except for the barest possible suspicion of evidence the record before us is utterly devoid of anything remotely approaching acceptable proof which would sustain plaintiff's claims for future pain and suffering, disfigurement or possible impairment of earning capacity, and as a result we think any detailed discussion of these items would be in the nature of academic exercise.
The only item upon which plaintiff has offered any reasonable evidence relates to his pain and suffering following the accident. Fortunately, the injuries inflicted were neither severe nor serious. Following the accident plaintiff was removed to the Confederate Memorial Hospital where he was given first-aid treatment; he was then removed to the P. & S. Hospital, where he was treated by Dr. E. T. Hilton. With reference to plaintiff's injuries Dr. Hilton testified:
"A. He had lacerations on the left side of the forehead and had some contusions over the ribs on the right side of the chest.
"Q. What did you do for him? A. We sutured the head wound and taped his chest up and kept him in the hospital overnight for observation in case of a brain concussion.
"Q. Was he released the following day? A. He was, yes, sir.
"Q. You didn't find any evidence of a brain concussion thereafter, did you? A. No, sir.
"Q. Did you see him after that, Dr. Hilton? A. One week later I saw him in the office to take his stitches out.
"Q. Had the wounds recovered at that time on the head? A. Yes, sir.
"Q. What was the condition of the ribs? A. He was complaining of no pain."
The witness could not testify positively that plaintiff's chest was taped at the time *916 he removed the stitches from the head wound.
Plaintiff testified that he suffered pain for "a long time"; that his chest was taped for about thirty days; that his forehead was bandaged for twelve days, and that though he lost no time from work his discomfort lasted for a period of "around 70 days" during which time he had to be assisted in his work by the warehouse employees of his company and by his customers.
On the basis of the above skeletal testimony we can only conclude that plaintiff's injuries were minimal and his recovery in the nature of damages should be limited to a nominal figure, which we fix in the amount of $500.
For the reasons assigned the judgment appealed from is annulled and set aside.
Defendant's motion to dismiss, insofar as it is directed against the plaintiff, Consolidated Underwriters, is sustained and there is judgment in favor of defendants and against the plaintiff, Consolidated Underwriters dismissing the demands of said plaintiff.
On the merits it is ordered that there be judgment in favor of the plaintiff, Robert S. Hart, and against the defendants, James E. Hardgrave and Mrytle D. Hardgrave, in solido, in the sum of $500 with interest thereon at the rate of 5% per annum from date of judicial demand until paid.
It is further ordered, adjudged and decreed that there be judgment in favor of plaintiff, Continental Supply Division, Youngstown Sheet & Tube Company, and against the defendants, James E. Hardgrave and Myrtle D. Hardgrave, in solido, in the sum of $579.77 with interest at the rate of 5% per annum from date of judicial demand until paid.
It is further ordered that costs of this appeal be and they are taxed against plaintiff-appellant, Consolidated Underwriters, and all other costs are assessed against defendants-appellees.

On Rehearing
AYRES, Judge.
Rehearing was granted herein on defendants' application for the purpose of a reconsideration of the legal issues involved, (1) as to the liability of the defendant, James E. Hardgrave, and (2) as to defendants' plea of res judicata. Consideration of these issues will be given in the order listed.
The defendants are husband and wife. The only allegations with respect to the husband's responsibility were the general averments that he owned the automobile which was being driven at the time of the accident by his wife with his knowledge and consent. There are neither allegations nor proof that Mrs. Hardgrave was on a community mission or in the service of her husband at the time of the accident.
Although there is no liability in Louisiana for damages sounding in tort unless expressly or impliedly authorized by Codal articles and the statutes, the general rule is one is responsible not only for the damage occasioned by his own acts but for that which is caused by the act of persons for whom he is answerable, or for the things which are in his custody. LSA-C.C. Art. 2317. There is no law cited by counsel or known to us whereby a husband merely as such is answerable for the tortious acts of his wife. The jurisprudence of this State is in accord with the Civil Law Doctrine that a husband is not liable for the torts of his wife committed out of his presence. McClure v. McMartin, 104 La. 496, 29 So. 227; Adams v. Golson, 187 La. 363, 174 So. 876.
The jurisprudence is likewise well settled that the owner of an automobile *917 is not liable for damages caused while his automobile is being operated by a third person with his knowledge and consent unless he was present or the third person was his agent, servant or employee and was acting within the scope of his agency or employment at the time of the accident. Atkins v. Points, 148 La. 958, 88 So. 231; Adams v. Golson, supra. The wife, as the operator of the family automobile, is, therefore, no exception to the aforesaid general rule. In order to hold the husband, as head and master of the community of acquets and gains existing between him and his wife, liable for the tortious acts committed by the wife, it must be affirmatively established that she was expressly or impliedly authorized and was at the time of the commission of the tortious act in the service of the community by actually attending to the affairs or business of the community. Adams v. Golson, supra; Tuck v. Harmon, La.App., 151 So. 803; Wise v. Smith, La. App., 186 So. 857; Meibaum v. Campisi, La.App., 16 So.2d 257.
In applying the above stated principles of law to the facts and circumstances of this case, the conclusion is inescapable that a husband merely as such is not liable for the tortious acts of his wife; consequently, it was error to hold the defendant, James E. Hardgrave, liable in the instant case. In justice to plaintiffs' counsel, it may be stated the application of these principles to the facts of this case are not controverted on this rehearing.
Next for consideration is defendants' plea of res judicata. LSA-C.C. Art. 2286 provides, with reference to a plea of this character, that:
"The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same; the demand must be founded on the same cause of action; the demand must be between the same parties, and formed by them against each other in the same quality." (Emphasis supplied.)
Defendants' plea must necessarily be predicated upon the aforesaid Codal provision and upon its interpretation in the jurisprudence of Louisiana.
As pointed out in International Paper Co. v. Maddox, 5 Cir., 203 F.2d 88, 90, the doctrine of res judicata is stricti juris and any doubt as to the identity of claims must be resolved in favor of the plaintiff. In the cited case it was stated:
"The doctrine of res judicata in Louisiana is found in Art. 2286 of the LSA-Civil Code of Louisiana, which is as follows: The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same; the demand must be founded on the same cause of action; the demand must be between the same parties, and formed by them against each other in the same quality. The Louisiana doctrine is much more restricted than at common law. State ex rel. Puritan Co. v. City of New Orleans, 169 La. 365, 125 So. 273. Its scope is defined and limited by statutory declaration. Woodcock v. Baldwin, 110 La. 270, 34 So. 440; Smith v. Little Pine Lumber Co., 150 La. 720, 91 So. 165. It is stricti juris, and any doubt as to the identity of the two claims must be resolved in favor of the plaintiff. Bullis v. Town of Jackson, 203 La. 289, 14 So.2d 1, citing Hope v. Madison, 194 La. 337, 193 So. 666. See also Carter Oil Co. v. Jackson, 194 Okl. 621, 153 P.2d 1013."
In the above quoted case, it was held that, although the judgment was entered in an action for total temporary damages resulting from the pollution of a stream by a paper mill, which regularly dumped refuse matter into the stream, thereby damaging plaintiff's fishing business, a plea of res judicata would not be sustained in an action *918 by the same plaintiff against the same defendant for permanent damages for the destruction of plaintiff's fishing business, the claims for total temporary damages and for total permanent damages being different. This ruling was in accord with the doctrine prevailing in this State, which is, as pointed out, much more restricted than at common law. See also Adkins v. Cason, La.App., 170 So. 366, 371; Lloveras v. Reichert, 197 La. 49, 200 So. 817.
In this latter case it was held that the plea may not be sustained unless each of the three essentials of res judicata, as set forth in LSA-C.C. Art. 2286, is present. There must be identity of demands, parties and cause of action. Quarles v. Lewis, 226 La. 76, 75 So.2d 14. Neither can the principle of res judicata be applied indiscriminately in such a fashion as to lead to absurd consequences. Weiser v. Di Cristina, 221 La. 306, 59 So.2d 401. In the latter case plaintiff sought to have declared forfeited a deposit made by defendant in connection with his offer to purchase certain real property in New Orleans. In a prior suit it was held that Di Cristina had no right to bring an action for specific performance because the time within which he had been obligated to take title had expired. The prior judgment was held no bar to an action involving the forfeiture of the deposit. The objects of the demands were obviously different.
As heretofore pointed out, inasmuch as the Louisiana doctrine of res judicata is much more restricted than at common law, no useful purpose could be served by a detailed discussion of the authorities cited and relied upon from other jurisdictions. We observe, however, that the decision of the United States Supreme Court in City of New Orleans v. Citizens' Bank of Louisiana, 167 U.S. 371, 398, 17 S.Ct. 905, 42 L.Ed. 202, 211, is not apropos. The ruling therein was quoted verbatim from the decision of the Louisiana Supreme Court in Heroman v. Louisiana Institute of Deaf and Dumb, 34 La.Ann. 805, 815, wherein it was particularly noted that "All the present plaintiffs were parties to that suit", that is, the suit in which the judgment constituted the basis for the plea.
The sole question for our consideration here is one of lawdoes the present action come within the purview of LSA-C.C. Art. 2286, hereinabove quoted, as the thing adjudged? The uncontroverted facts upon which defendants' plea is based are set forth in their motion, which we quote:

"1.
"The above matter is an appeal from a judgment of the First Judicial District Court for the Parish of Caddo, rejecting demands of plaintiffs-appellants for damages resulting from an automobile accident which occurred on September 10, 1955, involving a vehicle driven by Robert S. Hart and one driven by Mrs. Myrtle D. Hardgrave.

"2.
"In Civil Action No. 5344 of the United States District Court for the Western District of Louisiana, Shreveport Division, James E. Hardgrave and Myrtle D. Hardgrave asserted a claim for damages arising out of the same accident on September 10, 1955, against Consolidated Underwriters, the liability insurer of Robert S. Hart; that as more fully appears from a certified copy of the judgment rendered in said Civil Action No. 5344 on March 19, 1957, Mrs. Myrtle D. Hardgrave was awarded the sum of $13,500.00.

"3.
"Appearers show that the judgment of the District Court in the above numbered and entitled proceeding rejecting the demands of plaintiffs-appellants in this action was rendered by Judge *919 Henry F. Turner on June 19, 1957, as shown by page 128 of the record in this cause.

"4.
"Appearers show that on June 26, 1957, after the judgment was rendered in the present proceeding, the parties in Civil Action No. 533, in the United States District Court, filed a joint motion to dismiss, wherein it was alleged that the parties had fully compromised and settled the dispute between them growing out of the collision which occurred on September 10, 1955, and that the judgment in favor of Mrs. Myrtle D. Hardgrave had been satisfied; that on June 26, 1957, said parties obtained an order from Judge Ben C. Dawkins, Jr., to the effect that the judgment in favor of Mrs. Hardgrave, growing out of the automobile collision of September 10, 1955, was fully and completely satisfied, as evidenced by certified copy of the Motion to Dismiss and Order attached hereto and made a part hereof.

"5.
"Appearers show that there is no real controversy between the parties to this cause; that by virtue of compromise agreement, accord and satisfaction, the questions presented by this appeal have become moot and plaintiffs-appellants, by satisfaction of the judgment in favor of Mrs. Hardgrave have acquiesced therein and waived any right to appeal in these proceedings; that the said judgment in Civil Action No. 5344 and Joint Motion to Dismiss and Order setting forth a full settlement and satisfaction of judgment is res judicata of the issues presented in this appeal." (Emphasis supplied.)
To detail the facts briefly, the record discloses that two actions were filed for damages caused by a single automobile accident. The instant action was filed by Hart, his employer and his employer's compensation insurance carrier. Hart sought to recover damages for personal injuries; the employer, damages to the automobile driven by Hart, its employee; and the compensation insurance carrier, compensation paid Hart as a result of disability sustained in said accident. Made defendants were Mrs. Myrtle D. Hardgrave, driver of the other automobile involved in the collision, and her husband, James E. Hardgrave.
The second of these actions was filed by the defendants, Hardgraves, in the United States District Court for the Western District of Louisiana and the defendant was Consolidated Underwriters, Hart's employer's public liability insurance carrier, which was also the employer's compensation insurance carrier.
The instant case was tried and resulted in a rejection of plaintiffs' demands, and they appealed. The trial of the action in the Federal Court resulted in a judgment in favor of Mrs. Hardgrave against Consolidated Underwriters, which was not appealed, but which, of course, was subject to an appeal, after which, however, it appears that in a joint motion to dismiss filed by the Hardgraves and Consolidated Underwriters it was alleged that the parties had fully compromised and settled the dispute between them growing out of the collision which occurred September 10, 1955. Predicated upon these allegations, an order was obtained reciting, in effect, that the judgment obtained by Mrs. Hardgrave was fully and completely satisfied.
Neither the judgment nor the aforesaid compromise settlement complies with the requisites of the aforesaid Codal provision so as to constitute the basis for a plea of res judicata. First, the Codal article provides that res judicata takes place only with respect to what was the object of the judgment and enumerates three specific requirements which must be met when there is an identical object of the judgment. The first of these is that the thing demanded must be the same. Obviously, the demands *920 in the two actions were not the same. As heretofore pointed out, Hart's demands are for damages for personal injuries sustained by him; the employer's demands are for damages to its automobile, and the compensation insurer's demands are for compensation expended by it as a result of Hart's disability caused by the accident; whereas, in the Federal Court action, Mrs. Hardgrave sought damages for personal injuries sustained by her, and James E. Hardgrave for damages evidently claimed to have been sustained by him as a result of the accident.
The second requirement is that the demand must be founded on the same cause of action; however, "cause of action" is not synonymous with "automobile collision." A cause of action may or may not result from an automobile collision. Several persons may each separately have a cause of action resulting from a single automobile collision. The demand in the Federal Court was upon an alleged cause of action of James E. Hardgrave and Mrs. Myrtle D. Hardgrave. The demands in the instant case are on causes of action allegedly existing in favor of each of the plaintiffs. As pointed out, there is a clear difference and a distinction in the causes of action of plaintiffs and defendants.
Nor were the demands between the same parties and formed by them against each other in the same quality in the two suits. Of the parties to this action, only Consolidated Underwriters and Mr. and Mrs. Hardgrave were parties in the action in the United States District Court. Neither Hart nor Continental Supply Division of the Youngstown Sheet and Tube Company was made a party to the action in the Federal Court.
Defendants insist, however, that the judgment of the Federal Court is binding upon plaintiffs, Hart and his employer, because they were alleged privies of Consolidated Underwriters, the insurer of the employer's vehicle and the defendant in the Federal Court action. They point out that the contract of insurance was obtained by the owner of the vehicle, who was a named insured, and that Hart was an omnibus insured. Neither Hart nor his employer had any interest in the Hardgrave action against Consolidated Underwriters in the Federal Court. "Privy" has been defined as one who is a partaker or has any part or interest in any action, matter or thing. Cyclopedic Law Dictionary, p. 725; Black's Law Dictionary, p. 1359, 1362. The relationship here does not conform to those definitions. Moreover, it was held in Sewell v. Newton, La.App., 152 So. 389, 393, that an unsuccessful suit against an insured who carried an automobile liability policy does not bar the injured party from bringing suit against the insurer under the provisions of Act 55 of 1930 (LSA-R.S. 22:655) and LSA-C.C. Art. 2095.
Moreover, it does not appear in the statement of facts set forth in defendants' plea or elsewhere in the record that the judgment obtained by defendants in the Federal Court ever became final. By reference to that statement, particularly to the portions which we have emphasized, it would clearly appear that the parties thereto compromised the dispute between them growing out of the collision which occurred September 10, 1955. Neither Hart nor his employer was a party to that agreement. It would be inconceivable that those parties, through such an agreement, could affect the rights of third parties and thereby bar and preclude such third parties from the assertion of their cause or causes of action for damages suffered by them. The sustaining of the plea as to Consolidated Underwriters was predicated primarily upon the aforesaid compromise and settlement entered in accord and satisfaction of the judgment therein rendered, for, in our original opinion, we stated:
"* * * we think the plea of res judicata is good, for the motion to dismiss specifically evidences the intention *921 of the parties thereto to terminate all disputes between them, * * *"; (that is, the parties to the compromise agreement). (Emphasis supplied.)
The plea of res judicata, however, as to plaintiffs, Hart and Continental Supply Division, Youngstown Sheet and Tube Company, is untenable in that the facts upon which it is based do not meet the requirements of LSA-C.C. Art. 2286, as hereinabove pointed out. Nor is there such a privity of interest that would bind plaintiffs, Hart and his employer, in a compromise agreement to which they were not parties.
Therefore, for the aforesaid reasons, our original judgment is amended so as to relieve the defendant, James E. Hardgrave, from liability, and, as thus amended, our original decree is reinstated and made the final judgment of this court.
Original decree amended and reinstated.